# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

|  |  |  |
|---|---|---|
| IGOR ZAPADINSKY, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| Plaintiff, | : | Case No.: 2:23-CV-00231-JPS |
| | : | |
| v. | : | |
| | : | |
| BLUE DIAMOND GROWERS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLUE DIAMOND GROWERS' MOTION TO DISMISS THE COMPLAINT

Paul E. Benson
**Michael Best & Friedrich LLP**
790 North Water Street, Suite 2500
Milwaukee, WI 53202
414-225-2757
pebenson@michaelbest.com

Colleen Carey Gulliver
Rachael C. Kessler*
Jason E. Kornmehl
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
212-335-4500
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com
jason.kornmehl@us.dlapiper.com

*Application for admission pending

*Counsel for Defendant Blue Diamond Growers*

May 22, 2023

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .........................................................................1

STANDARD OF REVIEW .............................................................................4

ARGUMENT ..................................................................................................5

I.     PLAINTIFF HAS NOT SUFFERED AN INJURY CAUSED BY BDG AND
       DOES NOT HAVE STANDING. .........................................................5

       A.     Plaintiff Has Not Suffered A Pecuniary Loss Simply by Purchasing
              the Almonds. ...............................................................................5

       B.     Plaintiff Has Not Suffered an Injury-in-Fact Because A Price
              Premium Does Not Exist. .............................................................6

       C.     There Is No Causal Connection Between Smokehouse® and Any
              Purported Price Premium Injury. ..................................................9

       D.     Plaintiff Does Not Have Standing to Seek Injunctive Relief. ............10

II.    THE WUTPA CLAIM FAILS. .............................................................11

       A.     The Product Is Correctly Identified by Its "Common or Usual Name."........12

       B.     The Declaration of Identity Is Not "False, Deceptive, or Misleading." .........13

III.   PLAINTIFF    CANNOT    ASSERT    CLAIMS    UNDER    OTHER
       JURISDICTION'S CONSUMER FRAUD STATUTES.............................16

IV.    THE BREACH OF WARRANTY CLAIMS FAIL. ................................17

       A.     Plaintiff Does Not Plead Privity. ................................................17

       B.     Plaintiff Did Not Provide Pre-Suit Notice to BDG. ........................18

       C.     BDG Did Not Make Any Affirmation Regarding the Almonds. .........19

       D.     The Almonds Were Fit for Human Consumption. ...........................19

       E.     The Fitness for a Purpose Claim Fails for Several Additional Reasons. .......20

V.     THE MMWA CLAIM FAILS. ..............................................................22

VI.    THE UNJUST ENRICHMENT CLAIM FAILS. ....................................23

VII.   PLAINTIFF'S    FRAUD    AND    NEGLIGENT    MISREPRESENTATION
       CLAIMS FAIL. ..................................................................................24

       A.     The Economic Loss Rule Bars the Fraud and Negligent
              Misrepresentation Claims. .........................................................24

       B.     Plaintiff Fails to Plead the Elements of Fraud and Negligent
              Misrepresentation. .....................................................................26

              1.     Plaintiff Does Not Plead Reliance. ....................................26

              2.     Plaintiff Does Not Plead Fraudulent Intent. .........................27

              3.     Plaintiff Fails to Allege a Duty to Disclose. ........................28

CONCLUSION ..............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. SunTrust Mortg., Inc.*,
  2009 WL 127858 (E.D. Va. Jan. 15, 2009) ...........................................................20

*Alswager v. Rocky Mtn. Instrumental Labs., Inc.*,
  2011 WL 1113371 (E.D. Wis. Mar. 24, 2011) (Stadtmueller, J.)....................26, 29

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ...................................................................4, 5, 7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................4

*Beardsall v. CVS Pharm., Inc.*,
  953 F.3d 969 (7th Cir. 2020) .................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ...................................................................................6

*Bowen Med. Co. v. Nicolet Biomed. Inc.*,
  2002 WL 32340885 (W.D. Wis. Nov. 14, 2002).................................................24

*Boyd v. TTI Floorcare N. Am.*,
  230 F. Supp. 3d 1266 (N.D. Ala. 2011).................................................15, 16, 19

*Brame v. Gen. Motors LLC*,
  535 F. Supp. 3d 832 (E.D. Wis. 2021).................................................................25

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) .................................................................................20

*Brown v. Auto-Owners Ins. Co.*,
  2022 WL 2442548 (N.D. Ill. June 1, 2022) ........................................................17

*Bryant v. BMW of N. Am. LLC*,
  585 F. Supp. 3d 1178 (E.D. Wis. 2022)................................................................19

*Burlington Graphics Sys., Inc. v. Ritrama, Inc.*,
  2015 WL 4506878 (E.D. Wis. July 24, 2015) .....................................................21

Case 2:23-cv-00231-JPS   Filed 05/22/23   Page 3 of 40   Document 12

*Cadena v. Am. Honda Motor Co.*,
2021 WL 9839349 (C.D. Cal. Mar. 10, 2021) ........................................................11

*Calnin v. Hilliard*,
2008 WL 336892 (E.D. Wis. Feb. 5, 2008) (Stadtmueller, J.) .............................26

*Camasta v. Jos. A. Bank*,
761 F.3d 732 (7th Cir. 2014) .................................................................................10

*Castle v. Kroger Co.*,
2022 WL 4776319 (E.D. Wis. Oct. 3, 2022) ................................................. *passim*

*Clark v. Blue Diamond Growers*,
No. 22-CV-01591 (Mar. 27, 2022 N.D. Ill.)............................................................1

*Colangelo v. Champion Petfoods USA, Inc.*,
2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) .........................................................29

*Colpitts v. Blue Diamond Growers*,
2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) (“*Colpitts II*”)...........................2, 6, 8

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021) (“*Colpitts I*”) ........................................1, 15

*Colpitts v. Blue Diamond Growers*,
No. 20-CV-02487 (Mar. 22, 2020 S.D.N.Y.) ................................................1, 2, 30

*Connor v. Abbott Labs., Inc.*,
2023 WL 2690853 (S.D. Ill. Mar. 29, 2023) .........................................................28

*Cota v. Ralph Lauren Corp.*,
603 F. Supp. 3d 666 (E.D. Wis. 2022).....................................................10, 18, 27

*Cummings v. Blue Diamond Growers*,
No. 22-CV-00141 (June 24, 2022 N.D. Fla.)................................................. *passim*

*Elder v. Bimbo Bakeries USA, Inc.*,
2022 WL 816631 (S.D. Ill. Mar. 17, 2022) ...........................................................19

*Faxon Sales, Inc. v. U-Line Corp.*,
2017 WL 4990617 (E.D. Wis. Oct. 31, 2017) (Stadtmueller, J.) ...........................12

*Flynn v. FCA US LLC*,
39 F.4th 946 (7th Cir. 2022) ................................................................................5, 7

*Gallego v. Wal-Mart Stores, Inc.*,
707 N.W.2d 539 (Wis. Ct. App. 2005) ..................................................................12

*Great Atl. & Pac. Tea Co. v. FTC*,
440 U.S. 69 (1979)...........................................................................................9

*Grove Holding Corp. v. First Wis. Nat. Bank of Sheboygan*,
803 F. Supp. 1486 (E.D. Wis. 1992)...........................................................27, 28

*Guzman v. Walmart Inc.*,
2023 WL 3455319 (N.D. Ill. May 15, 2023) .................................................1, 2

*H.B. Fuller Co. v. Kinetic Sys., Inc.*,
932 F.2d 681 (7th Cir. 1991) .........................................................................20

*Haley v. Kolbe & Kolbe Millwork Co.*,
2015 WL 9255571 (W.D. Wis. Dec. 18, 2015) ...............................................21

*Hamus v. Bank of N.Y. Mellon*,
2011 WL 13266806 (W.D. Wis. May 13, 2011) ........................................26, 27

*Harris v. Rust-Oleum Corp.*,
2022 WL 952743 (N.D. Ill. Mar. 30, 2022)....................................................23

*Holmes v. FDIC*,
861 F. Supp. 2d 955 (E.D. Wis. 2012) (Stadtmueller, J.) .................................4

*Hongbo Han v. United Cont'l Holdings, Inc.*,
762 F.3d 598 (7th Cir. 2014) .........................................................................30

*Housey v. Procter & Gamble Co.*,
2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ....................................................8

*JBCB, LLC v. McKenna Berry Co., LLC*,
2017 WL 6403089 (Wis. Ct. App. 2017)....................................................29, 30

*Johnson v. Mars, Inc.*,
2008 WL 2777063 (W.D. Wis. July 14, 2008) ............................................19, 20

*Kinman v. Kroger Co.*,
604 F. Supp. 3d 720 (N.D. Ill. 2022) .............................................................28

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ......................................................................4, 13

*Lemke v. Kraft Heinz*,
2022 WL 1442922 (W.D. Wis. May 6, 2022) .................................................15

*Lesorgen v. Mondelēz*,
2023 WL 3568686 (N.D. Ill. May 19, 2023) .................................................1, 2

*Loeb v. Champion Petfoods USA Inc.*,
　　2018 WL 2745254 (E.D. Wis. June 7, 2018) (Stadtmueller, J.).......................13, 17

*Martin v. LG Elecs. USA, Inc.*,
　　2015 WL 1486517 (W.D. Wis. Mar. 31, 2015)........................................................16

*In re McDonald's French Fries Litig.*,
　　503 F. Supp. 2d 953 (N.D. Ill. 2007) ....................................................................22

*Muller v. Blue Diamond Growers*,
　　No. 22-CV-00707 (May 24, 2022 E.D. Mo.).............................................................1

*Rivera v. Invitation Homes*,
　　2019 WL 11863726 (N.D. Cal. June 19, 2019) ....................................................17

*Rivers of Life Int'l Ministries v. GuideOne Ins. Co.*,
　　2022 WL 17261845 (W.D. Tenn. Nov. 18, 2022) ................................................17

*Robin v. Arthur Young & Co.*,
　　915 F.2d 1120 (7th Cir. 1990) ...............................................................................28

*Sand v. Milwaukee Cnty. House of Corr.*,
　　2019 WL 6117595 (E.D. Wis. Nov. 18, 2019) ......................................................12

*Sanders v. Hillshire Brands Co.*,
　　2022 WL 2643974 (S.D. Ill. July 8, 2022) ............................................................28

*Smith v. RecordQuest, LLC*,
　　989 F.3d 513 (7th Cir. 2021) .................................................................................24

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016)..............................................................................................7, 9

*St. Paul Mercury Ins. Co. v. The Viking Corp.*,
　　539 F.3d 623 (7th Cir. 2008) .................................................................................17

*Tietsworth v. Harley-Davidson, Inc.*,
　　677 N.W.2d 233 (Wis. 2004)..................................................................................30

*Tropp v. Prairie Farms Dairy, Inc.*,
　　2021 WL 5416639 (W.D. Wis. Nov. 19, 2021).........................................12, 13, 14

*Troutt v. Mondelez Glob.*,
　　2022 WL 16552956 (S.D. Ill. Oct. 31, 2022) ........................................................10

*United States v. Topco Assocs., Inc.*,
　　405 U.S. 596 (1972)..................................................................................................9

*Van Den Heuvel v. AI Credit Corp.*,
  951 F. Supp. 2d 1064 (E.D. Wis. 2013)...................................................29, 30

*Veath Fish Farm, LLC v. Purina Animal Nutrition, LLC*,
  2017 WL 4472784 (S.D. Ill. Oct. 6, 2017) ............................................21

*In re Vioxx Prods. Liab. Litig.*,
  522 F. Supp. 2d 799 (E.D. La. 2007)....................................................16

*W. Allis Mem'l Hosp., Inc. v. Bowen*,
  852 F.2d 251 (7th Cir. 1988) ...............................................................11

*Weaver v. Champion Petfoods USA Inc.*,
  2019 WL 2774139 (E.D. Wis. July 1, 2019) (Stadtmueller, J.)............17, 23, 24, 29

*Weaver v. Champion Petfoods USA Inc.*,
  471 F. Supp. 3d 876 (E.D. Wis. 2020) (Stadtmueller, J.) ..............6, 23, 24

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ...............................................................28

*Winston v. Hershey Co.*,
  2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020)..................................29, 30

*Zapata v. C3T, Inc.*,
  2013 WL 5786579 (E.D. Wis. Oct. 28, 2013) (Stadtmueller, J.) ...........9

*Zylstra v. DRV, LLC*,
  8 F.4th 597 (7th Cir. 2021) ..................................................................23

**Statutes**

3 L.P.R.A. § 341r...................................................................................12

15 U.S.C. § 2301(6)(A).........................................................................22

Am. Samoa Consumer Prot. Act...........................................................16

Ariz. Rev. Stat. Ann. § 44-1522............................................................12

Guam Code Ann. § 32111(a)................................................................12

Wis. Stat. § 97.03..................................................................................12

Wis. Stat. § 100.20.......................................................................3, 5, 6, 11

Wis. Stat. § 100.183(1).........................................................................12

Wis. Stat. § 402.315........................................................................20, 21

Case 2:23-cv-00231-JPS   Filed 05/22/23   Page 7 of 40   Document 12

Wis. Stat. § 402.607(3)(a)..........................................................................................................18, 19

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

Proposed Jury Instructions ................................................................................... *passim*

# PRELIMINARY STATEMENT

This is the fifth analogous case—four of which have been filed by counsel for Plaintiff Igor Zapadinsky ("Plaintiff")[1]—challenging Blue Diamond Growers' ("BDG") labeling of its Smokehouse® Almonds (the "Almonds"), which describe their smoky taste. One court in this Circuit has noted that "Plaintiff's counsel has developed a fair bit of notoriety for filing cases about consumer labeling" and "[m]any of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad" as "[t]hey haven't survived for long." *Guzman v. Walmart Inc.*, 2023 WL 3455319, at *3 (N.D. Ill. May 15, 2023). Another court in this Circuit echoed the *Guzman* Court's "warning to [Plaintiff's] counsel" and reminded him of "his obligations under Rule 11," admonishing that "[s]paghetti is best eaten, not thrown at walls." *Lesorgen v. Mondelēz*, 2023 WL 3568686, at *4-5 (N.D. Ill. May 19, 2023).

This action is no different as Plaintiff's counsel has twice unsuccessfully pursued claims nearly identical to those made here. The first of Plaintiff's counsel's cases was filed two years ago in the Southern District of New York. *See Colpitts v. BDG*, 527 F. Supp. 3d 562, 592 (S.D.N.Y. 2021) ("*Colpitts I*"). The court in that case granted BDG's motion to dismiss the asserted breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment claims and denied only BDG's motion to dismiss the New York General Business Law ("GBL") claims, despite determining that the plaintiff's allegations "present[ed] a close call" as to whether they were even plausibly pled. 527 F. Supp. 3d at 580-84. To reach this ruling, the court did not

---

[1] *See Colpitts v. Blue Diamond Growers*, No. 20-CV-02487 (Mar. 22, 2020 S.D.N.Y.) (analogous action brought by Plaintiff's counsel); *Clark v. Blue Diamond Growers*, No. 22-CV-01591 (Mar. 27, 2022 N.D. Ill.) (same); *Cummings v. Blue Diamond Growers*, No. 22-CV-00141 (June 24, 2022 N.D. Fla.) (same); *see also Muller v. Blue Diamond Growers*, No. 22-CV-00707 (May 24, 2022 E.D. Mo.) (analogous action brought by different counsel).

consider the prominent image on the Almonds' front of pack label that clearly shows the Almonds coated in a visible seasoning.

On May 15, 2023, the court in *Cummings v. BDG* disagreed with *Colpitts* and dismissed in its entirety the third of Plaintiff's counsel's cases. *See* 2023 WL 3487005, at *1, 7 (N.D. Fla. May 15, 2023). The court held that no "objectively reasonable consumer would likely be deceived" by the Almonds' label because Smokehouse® is "clearly used as a flavor indicator" and does not convey to a reasonable consumer "that an actual smoking process was involved." *Id.* at *3.

The *Colpitts* Court ultimately granted BDG's motion for summary judgment on the remaining GBL claims. *See Colpitts v. BDG*, 2023 WL 2752161, at *1 (S.D.N.Y. Mar. 31, 2023) ("*Colpitts II*"). In so doing, the court held that BDG's line pricing of its snack almond products, which means that BDG prices its *unflavored* Almonds at the same price as the Smokehouse® Almonds (or any other flavor), demonstrates "that the Smokehouse Almonds do not command a price premium" and that there was "no evidence showing that [the plaintiff] suffered an actual injury." *Id.* at *4.

Plaintiff's counsel here persists in bringing the same case a fourth time, wasting the Court's and the parties' resources knowing full well that Plaintiff and others have suffered no pecuniary harm due to the Smokehouse® label. "Courts have an institutional interest in protecting themselves from frivolous cases, because it is not fair to the countless other litigants in countless other cases that deserve a court's attention." *Guzman*, 2023 WL 3455319, at *3. Yet, "Plaintiff's counsel has become a wrecking ball when it comes to imposing attorneys' fees on other people" and "[a]t some point, even lawyers have to internalize the costs of their own behavior." *Id.* at *4.

This Court should dismiss Plaintiff's complaint (the "Complaint" or "Compl.") for numerous independent reasons, including:

- Plaintiff's allegation that he would not have purchased the Almonds if he knew they were not smoked is insufficient to allege an injury (*see* Part I.A);

- Plaintiff does not have Article III standing to assert any of his claims because he has not suffered an injury-in-fact as he did not pay a price premium (*see* Part I.B);

- There is not a causal connection between "Smokehouse®" and any purported price premium paid by Plaintiff (*see* Part I.C.);

- Plaintiff's request for injunctive relief must be denied because he does not allege future harm and Wis. Stat. § 100.20[2] does not authorize private plaintiffs to seek injunctive relief (*see* Part I.D);

- Plaintiff's WUTPA claim must also be dismissed because he fails to allege a violation of two regulations promulgated by the Wisconsin Department of Agriculture, Trade and Consumer Protection ("DATCP") (*see* Part II);

- Plaintiff cannot assert claims under the consumer fraud acts of American Samoa, Arizona, Guam, Puerto Rico, and the U.S. Virgin Islands (the "Multi-State Consumer Fraud Claims") because America Samoa and Puerto Rico do not authorize a private right of action for consumer fraud and Plaintiff cannot assert claims under laws of states where he does not reside and has suffered no injury (*see* Part III);

- The breach of express and implied warranty claims fail because Plaintiff fails to plead privity with BDG (*see* Part IV.A) and did not provide pre-suit notice (*see* Part IV.B);

- The breach of express warranty claim also fails because BDG did not promise that the Almonds derive their smoky flavor from being cooked over a fire (*see* Part IV.C);

- The breach of implied warranty claim also fails because the Almonds were fit for human consumption (*see* Part IV.D);

- The breach of the implied warranty of fitness for a particular purpose claim fails because Plaintiff does not plausibly allege: (1) that he purchased the Product for a particular purpose; (2) that BDG knew what this purpose was before his purchase; and (3) that he relied on the BDG's judgment to select the goods (*see* Part IV.E);

- The Magnuson Moss Warranty Act ("MMWA") claim fails because: (1) BDG did not issue a written warranty as defined by the statute and (2) Plaintiff fails to allege an

---

[2] Plaintiff refers to Wis. Stat. § 100.20 as the "Wisconsin Unfair Trade Practices Act" (*see* Compl. p. 15), but "neither the statute itself nor case law construing it have given the statute that name." *Castle v. Kroger Co.*, 2022 WL 4776319, at *4 n.3 (E.D. Wis. Oct. 3, 2022) (quoting *Tropp v. Prairie Farms Dairy, Inc.*, 2021 WL 5416639, at *2 n.1 (W.D. Wis. Nov. 19, 2021)). In the interest of consistency and for ease of reference, BDG will also refer to Wis. Stat. § 100.20 as the Wisconsin Unfair Trade Practices Act ("WUTPA").

underlying state law warranty claim (*see* Part V);

- The unjust enrichment claim fails because (1) Plaintiff did not purchase the Almonds directly from BDG; (2) he does not allege an improperly retained benefit by BDG; and (3) the claim is merely duplicative of his other causes of action (*see* Part VI); and

- The fraud and negligent misrepresentation claims fail because they are barred by the economic loss doctrine (*see* Part VII.A) and Plaintiff does not plead the elements of fraud and negligent misrepresentation, including reliance, fraudulent intent, and duty (*see* Parts VII.B, VII.C, and VII.D).

## STANDARD OF REVIEW

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555). A court also "need not accept as true statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). In addition, claims sounding in fraud require greater specificity and a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Separately, under Rule 12(b)(1), a defendant may make a "factual challenge" to standing when "the contention is that there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444 (7th Cir. 2009). "[W]hen considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Id*.; *see also Holmes v. FDIC*, 861 F. Supp. 2d 955, 956 (E.D. Wis. 2012) (Stadtmueller, J.) ("[T]he court is permitted to look beyond the complaint to determine the fact of jurisdiction."). "[N]o presumptive truthfulness

4

attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Apex Digital*, 572 F.3d at 444. "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific evidence to satisfy each of the elements necessary to establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022).

## ARGUMENT

## I. PLAINTIFF HAS NOT SUFFERED AN INJURY CAUSED BY BDG AND DOES NOT HAVE STANDING.

At the outset, the Complaint must be dismissed because Plaintiff has not suffered an injury. Plaintiff formulaically alleges that he was injured because he "would not have purchased the [Almonds]" or would not "have paid as much" for them had he known the source of their flavoring. (Compl. ¶¶ 119, 140, 147.) But these allegations fail because: (1) that Plaintiff purportedly "would not have purchased" the Almonds is not a compensable injury; (2) Plaintiff does not have an Article III injury-in-fact because he did not pay a price premium; (3) any price premium that does exist was not fairly traceable to the Smokehouse® brand name; and (4) Plaintiff does not have standing to seek injunctive relief.

### A. Plaintiff Has Not Suffered A Pecuniary Loss Simply by Purchasing the Almonds.

The WUTPA provides that "[a]ny person suffering pecuniary loss because of a violation . . . [of] any order issued under this section may sue for damages." Wis. Stat. § 100.20(5). Plaintiff's allegation that he "would not have purchased the [Almonds]" is not a pecuniary loss. (*See* Compl. ¶¶ 119, 140, 147.) In *Hoffman v. Gribble*, the court rejected the plaintiff's contention "that a consumer's pecuniary loss equals all payments made while subjected to an unfair trade practice" because Wisconsin law "explicitly rejects this expansive interpretation in which a violation *always* results in a pecuniary loss." 2023 WL 2027824, at *6 (Wis. Ct. App. Feb. 16,

2023) (emphasis added).  The court explained that even if a violation of the statute had occurred, a consumer "has not suffered a pecuniary loss if the customer admits to authorizing the [purchase]."  *Id.*; *accord Colpitts II*, 2023 WL 2752161, at *4 n.3 ("The New York Court of Appeals . . . has explicitly held that merely purchasing a mislabeled product is not an injury under section 349 or section 350 of the [GBL] absent further proof that the purchase in some way injured the plaintiff."); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647-48 (7th Cir. 2019) (plaintiffs' allegation that they "would not have purchased" product insufficient to plead Illinois Consumer Fraud Act's "pecuniary loss" requirement).

This Court previously confirmed that such a theory of recovery is "forbid[den]" because a purported "overpayment for what turned out to be a less-than-premium product" is a circumstance in "which a full refund would be inappropriate."  *See Weaver v. Champion Petfoods USA Inc.*, 471 F. Supp. 3d 876, 887 (E.D. Wis. 2020) (Stadtmueller, J.), *aff'd*, 3 F.4th 927 (7th Cir. 2021).

Here, Plaintiff's allegation that he "would not have purchased the Product" (Compl. ¶¶ 119, 140, 147) is insufficient to plead the WUTPA's pecuniary loss requirement because Plaintiff agreed to purchase the Almonds and a mere purchase of a purportedly mislabeled product is not a pecuniary loss under the statute.  *See Hoffman*, 2023 WL 2027824, at *6; *see also* Proposed Jury Instructions ("PJI"), § II.A (Plaintiff must show that the fair market value of the Almonds in their condition when purchased by Plaintiff was worth less than the fair market value of the Almonds had they been as they were represented to be by BDG).

### B.     Plaintiff Has Not Suffered an Injury-in-Fact Because A Price Premium Does Not Exist.

As to Plaintiff's remaining allegation of injury—that he "would have paid less" (Compl. ¶¶ 70, 89)—this too fails because Plaintiff did not pay a price premium:  the Almonds are priced *identically* to all of BDG's other flavors of almonds, including its *unflavored* almonds.  "[T]he

'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339.

In *Flynn*, for example, the Seventh Circuit affirmed the district court's dismissal of the plaintiffs' consumer fraud claims after the defendant made a factual challenge to standing. 39 F.4th at 949-50. The plaintiffs had alleged that they "suffered an 'overpayment' injury" because they "paid more for their vehicles than they would have if they had known" that the vehicles had a "cybersecurity vulnerability." *Id.* at 949. The Seventh Circuit held that "the plaintiffs failed to meet their burden" of establishing standing after they did not "cit[e] specific evidence" or "develop[] a factual argument ***demonstrating*** that they suffered an overpayment injury," and instead "relied on mere allegations from their complaint." *Id.* at 952 (emphasis added); *see also Apex Digital*, 572 F.3d at 444-45 (affirming dismissal based on factual challenge to standing because the plaintiff "failed to produce *any* evidence to rebut" the defendant's challenge).

Here, Plaintiff has not met his burden of establishing standing. While Plaintiff repeatedly and conclusorily alleges that the Almonds are "sold at a premium price" and "he would not have paid as much" for them (*see* Compl. ¶ 71; *see also id.* ¶¶ 91, 119, 140, 147), the truth is that he did not pay a premium. BDG charges retailers ***the same amount*** for the Almonds as it does for ***unflavored*** Whole Natural Almonds. (Albitz Decl. ¶¶ 8, 15 (emphasis added).) And Costco, where Plaintiff claims to have purchased the Almonds from, does the same (*id.* ¶ 12). As a result, "the Smokehouse Almonds do not command a price premium" because BDG "charges the same

wholesale and retail price for them as for other flavors of the Snack Almonds." *See Colpitts II*, 2023 WL 2752161, at *4; *see also Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022) (no "price premium" exists if "each of the variations or 'flavors'" of the product at issue "were sold at the same price").

Plaintiff compares BDG's Almonds to Planters Smoked Almonds, which he asserts "truthfully disclose[s]" the fact that they are not smoked "on the front label." (Compl. ¶ 53.) Throughout the class period, however, BDG's Almonds retailed for an average of approximately 31% *less than* the Planters Smoked Almonds. (*See* Albitz Decl. ¶ 18.) As the court in *Colpitts II* agreed, "Planters Smoked Almonds . . . are in fact sold for a higher price than the Smokehouse Almonds." 2023 WL 2752161, at *1, 4. In addition, Plaintiff points to the Nuts Aboutcha Hickory Smoked Almonds ("Nuts Aboutcha Almonds") as "[a]lmonds that are smoked in a smokehouse" (Compl. ¶ 51), but these almonds cost *almost three times as much* as BDG's Almonds. (*See* Erwin Decl. ¶ 8; *see also* Compl. ¶ 71.) This is not surprising because nuts that are actually smoked routinely cost significantly more than nuts that are not. (Erwin Decl. ¶ 7.) Thus, Plaintiff's own comparisons contradict his allegation that "[a]lmonds prepared in a smokehouse are not a . . . pricy delicacy." (Compl. ¶ 47.)[3] Accordingly, Plaintiff did not suffer an injury-in-fact sufficient to confer standing.[4]

---

[3] The Complaint also identifies Walmart's Great Value Natural Smoke Flavor Almonds ("Great Value") as a competitor product (Compl. ¶ 53), which is addressed *infra* Part I.C.

[4] The court in *Cummings* refused to consider BDG's evidence on a factual challenge of lack of injury because the Eleventh Circuit will not consider such a challenge if it is "inextricably intertwined with the merits." *See* 2023 WL 3487005, at *2 (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016).) The Seventh Circuit has no such limitation and has directed courts that "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims" and to "look beyond the jurisdictional allegations of the complaint." *Apex Digital*, 572 F.3d at 444.

## C. There Is No Causal Connection Between Smokehouse® and Any Purported Price Premium Injury.

Plaintiff also lacks Article III and statutory standing because any purported price premium is not fairly traceable to BDG's alleged conduct. Article III requires a plaintiff to establish that any injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 578 U.S. at 338. There must be "a causal connection between the challenged conduct and the alleged injury." *Zapata v. C3T, Inc.*, 2013 WL 5786579, at *3 (E.D. Wis. Oct. 28, 2013) (Stadtmueller, J.)). Likewise, under the WUTPA, a plaintiff "must show that there is a causal connection between a prohibited trade practice . . . and the damage incurred." *Hoffman*, 2023 WL 2027824, at *4 (quoting *Grand View Windows, Inc. v. Brandt*, 837 N.W.2d 611, 618 (Wis. Ct. App. 2013)); PJI, § II.A.i-iii (Plaintiff must establish loss causation for WUTPA claims).

Here, no causal connection exists between Smokehouse® and the non-existent price premium. While Plaintiff alleges that the Great Value almonds are a competitor product and cost less than BDG's Almonds because they disclose on the front label that the source of the smoky taste is from smoke flavoring (*see* Compl. ¶ 53), any price differential between the Great Value almonds and BDG's Almonds is attributable to Great Value's status as a private-label product owned by Walmart, as opposed to a brand-name product like BDG. (*See* Erwin Decl. ¶ 9; *see also* Albitz Decl. ¶ 19.) As the Supreme Court has observed, "[i]t is obvious that by using private-label products, a chain can achieve significant cost economies in purchasing, transportation, warehousing, promotion, and advertising. These economies may afford the chain opportunities for offering private-label products at ***lower prices*** than other brand-name products." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 599 n.3 (1972) (emphasis added); *see also Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 72 (1979) ("This agreement resulted from an effort by A&P to achieve cost savings by switching from the sale of 'brand label' milk . . . to the sale of 'private

label' milk."). Thus, any purported price differential between BDG's Almonds and the Great Value almonds is due to Great Value's status as a private-label product and is not fairly traceable to the Smokehouse® statement.[5]

### D. Plaintiff Does Not Have Standing to Seek Injunctive Relief.

Plaintiff also lacks Article III and statutory standing to seek injunctive relief. Plaintiff does not have Article III standing to seek injunctive relief because he has no risk of future harm. "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Camasta v. Jos. A. Bank*, 761 F.3d 732, 740-41 (7th Cir. 2014). Instead, a plaintiff must "sufficiently allege that [a defendant's] conduct will likely cause him harm in the future." *Id.* at 740. Where a plaintiff is "aware of [the defendant's] sales practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. Thus, courts in this Circuit routinely hold that allegations that a plaintiff "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that the Product's representations are consistent with its composition" do not create standing for future harm. *See, e.g.*, *Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 675-76 (E.D. Wis. 2022); *Troutt v. Mondelez Glob.*, 2022 WL 16552956, at *6 (S.D. Ill. Oct. 31, 2022) (no standing to pursue injunctive relief where plaintiff alleged that she "intends to, seeks to, and will purchase the [cookies] again when she can do so with the assurance that [the cookies] representations are consistent with its attributes, features, representations and/or composition").

---

[5] As the court in *Cummings* refused to consider BDG's evidence on a factual challenge, its statement that the evidence was "irrelevant" is dicta. 2023 WL 3487005, at *2. In any event, the statement appears to have stemmed from a misunderstanding of BDG's argument. BDG was rebutting the plaintiff's reliance on the Great Value Almonds' lower price, which implied that BDG's Almonds are sold a premium price, and explaining that any price differential was due to the product's status as a private label product.

For example, in *Castle v. Kroger Co.*, the Court dismissed a request for injunctive relief—which was sought by the same counsel as Plaintiff's here—where the plaintiff alleged that she "intends to and will buy the [product] again 'when she can do so with the assurance that Product's representations are consistent with its composition.'" 2022 WL 4776319, at *22 (E.D. Wis. Oct. 3, 2022). The court held that this allegation was insufficient to demonstrate "a 'real and immediate' threat of future injury." *Id.*

Plaintiff makes the same flawed allegation here: "Plaintiff intends to, seeks to, and will purchase the [Almonds] again when he can do so with the assurance the [Almonds'] representations are consistent with its abilities, attributes, and/or composition." (*See* Compl. ¶ 92.) But, just as in *Castle*, Plaintiff is now aware that the Almonds are not smoked and does not allege any intention to purchase the Almonds as currently labeled, and thus has not pleaded any threat of imminent, future harm. Thus, Plaintiff lacks Article III standing to seek injunctive relief.

In addition, Plaintiff does not have statutory standing under the WUTPA to seek injunctive relief because "only the state has the authority to seek [injunctive] relief." *W. Allis Mem'l Hosp., Inc. v. Bowen*, 852 F.2d 251, 258 (7th Cir. 1988); Wis. Stat. Ann. § 100.20(6) ("The [DATCP] may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of . . . any order issued under this section.").[6] Accordingly, the Complaint's request for injunctive relief fails.

## II.     THE WUTPA CLAIM FAILS.

"[P]rivate rights of action under [the WUTPA] are extremely limited" and "a claim may be made by a private person . . . only upon the defendant's violation of an order issued by the

---

[6] Plaintiff also has no standing to seek an injunction under Arizona's consumer fraud statute, which "expressly limits injunctive relief to the Arizona Attorney General." *Cadena v. Am. Honda Motor Co.*, 2021 WL 9839349, at *10 (C.D. Cal. Mar. 10, 2021) (citing Ariz. Rev. Stat. Ann. § 44-1528).

[DATCP]." *Faxon Sales, Inc. v. U-Line Corp.*, 2017 WL 4990617, at *7 nn.6, 8 (E.D. Wis. Oct. 31, 2017) (Stadtmueller, J.). Plaintiff bases his WUTPA claim on certain purported violations of DATCP regulations, including:

1. DATCP § 90.02(1), which requires a consumer commodity to be identified "by its common or usual name"; and

2. DATCP § 90.02(3), which prohibits "false, deceptive, or misleading" declarations of identity.[7]

(Compl. ¶¶ 110-12.) Plaintiff, however, has not plausibly alleged a violation of either of these regulations.[8]

### A. The Product Is Correctly Identified by Its "Common or Usual Name."

DATCP 90.02(1) provides that a product declaration "shall identify the commodity by its common or usual name, by its legally required name, if any, or by a generic name or other appropriate description that is readily understood by consumers." This requirement relates to "a general description of the *type* of product, not a description of the *ingredients or source of its flavor.*" *Tropp v. Prairie Farms Dairy, Inc.*, 2021 WL 5416639, at *3 (W.D. Wis. Nov. 19, 2021) (second emphasis added).

For example, in *Castle*, the court dismissed a WUTPA claim asserted by Plaintiff's counsel here premised on DATCP 90.02(1) where a buyer of cheese bearing the label "Smoked Gouda," even though the smoky taste came from smoke flavoring. 2022 WL 4776319, at *11. The plaintiff

---

[7] A false, deceptive, or misleading act is also a requirement of Plaintiff's consumer fraud claims under the laws of Arizona, Guam, Puerto Rico, and the U.S. Virgin Islands. *See* Ariz. Rev. Stat. Ann. § 44-1522; 5 Guam Code Ann. § 32111(a); 3 L.P.R.A. § 341r; 12A V.I.C. § 304.

[8] Plaintiff also attempts to assert a WUTPA claim based on "Wis. Stat. § 100.183(1) and Wis. Stat. § 97.03." (*See* Compl. ¶ 113.) However, Section 100.183 "does not provide a private right of action." *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 541 (Wis. Ct. App. 2005). In addition, "[e]nforcement of Chapter 97 lies with the [DATCP], not private litigants." *Sand v. Milwaukee Cnty. House of Corr.*, 2019 WL 6117595, at *5 (E.D. Wis. Nov. 18, 2019).

argued that "Smoked Gouda" was not the product's "'common or usual name,' 'legally required name,' or an 'appropriate description that is readily understood by consumers,' because it is not smoked." *See id.* at *10. The court disagreed and found that the common or usual name was "Gouda cheese." *Id.* at *11; *see also Tropp*, 2021 WL 5416639, at *3 (the common and usual name for "Premium Vanilla Bean Ice Cream" "[wa]s simply 'ice cream'" and did not relate to the source of the product's flavoring); *Loeb v. Champion Petfoods USA Inc.*, 2018 WL 2745254, at *7 (E.D. Wis. June 7, 2018) (Stadtmueller, J.) (dismissing WUTPA claim because DATCP § 90.02 simply requires that dog food "be labeled as dog food, and not cat (or human) food").

Like the plaintiff in *Castle*, Plaintiff here alleges that "'Smokehouse' is not the Product's 'common or usual name,' 'legally required name,' or an 'appropriate description that is readily understood by consumers,' because it is not smoked." (Compl. ¶ 110.) But DATCP 90.02(1) only requires "a general description of the *type* of product," *Castle*, 2022 WL 4776319, at *10-11, and the package here conspicuously identifies the product as "ALMONDS" on the front label, which is the common name of the product. (*See* Compl. ¶ 1.) Thus, Plaintiff's WUTPA claim premised on DATCP 90.02(1) must be dismissed. *See* PJI, § II.A.i. (Plaintiff must establish that BDG did not identify the Almonds by their common or usual name).

### B. The Declaration of Identity Is Not "False, Deceptive, or Misleading."

DATCP § 90.02(3) provides that "[t]he declaration of identity under [DATCP § 90.02(1)] may not be false, deceptive, or misleading." Here, the declaration of identity under DATCP § 90.02(1) is simply "almonds" (*see supra* Part II.A), which is not false, deceptive, or misleading as they are almonds. While Plaintiff alleges that the declaration of identity is Almonds – Smokehouse® (*see* Compl. ¶ 111), the court "need not accept as true statements of law." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Even if the declaration of identity is Almonds - Smokehouse® (which it is not), such a

declaration is not false, deceptive, or misleading.  Courts that have considered WUTPA claims premised on violations of DATCP 90.02(3) employ a "reasonable consumer" standard.  *Tropp*, 2021 WL 5416639, at *4.  Under that standard, a plaintiff must plausibly allege that the statement is "material" and would deceive "***a significant portion*** of the general consuming public or of targeted consumers, acting reasonably in the circumstances."  *Id.* at *4 n.4 (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020)) (emphasis added).

For example, in *Tropp*, the plaintiff argued that a "Premium Vanilla Bean Ice Cream" label was deceptive because the product was not flavored with vanilla beans and was "artificially flavored."  *Id.* at *1.  The court held that a "reasonable consumer would know that the phrase 'vanilla bean' is a reference to the flavor, not to the source of the flavor" and dismissed the action with prejudice.  *Id.* at *4.  The court rejected the plaintiff's argument that a court could "not resolve at the pleading stage the question whether a reasonable consumer would be misled" and explained that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified."  *Id.* at *6.

Here, no reasonable consumer seeing the brand name Smokehouse® on the front of the label would conclude that the source of the Almonds' flavor is "a shed or room for curing food," as Plaintiff alleges.  (*See* Compl. ¶¶ 12-19.)[9]  Rather, the reasonable consumer would simply conclude that the package contains exactly what one receives—almonds with a smoky taste.  *See Cummings*, 2023 WL 3487005, at *3 (Smokehouse® is "clearly used as a flavor indicator" and

---

[9] Plaintiff vaguely alleges that he "relied on the words, terms[,] coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its direction, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing."  (Compl. ¶ 87.)  He does not, however, identify anything other than the brand name Smokehouse® and red coloring.  (*See* Compl. ¶¶ 1-2, 11-19, 28.)

does not convey to reasonable consumer "that an actual smoking process was involved"). Plaintiffs' reliance on the dictionary definition of "Smokehouse" does not change this outcome, as reasonable consumers understand that they are not buying a literal "building where meat or fish is cured." (*See* Compl. ¶ 14.)[10]

In addition, "[u]nder the reasonable consumer standard," courts "look holistically at advertising to determine whether it is misleading." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 978 (7th Cir. 2020). Here, the full context of the Almonds' front of pack label makes clear that their smoky flavor comes from seasoning, not smoking. In close proximity to Smokehouse® on the front of the pack label is a prominent image that clearly shows the Almonds coated in a visible seasoning.[11] (*See* Compl. ¶ 1.) The ingredient panel further confirms that the seasoning contains "natural hickory smoke flavor." (*See id.* ¶ 45.)[12]

Moreover, a trademark symbol appears next to Smokehouse®, and "courts reject reliance upon a tradename to show the existence of an express warranty or deception." *Boyd v. TTI*

----

[10] Courts in this Circuit have also rejected other actions "brought by [P]laintiff's counsel for advancing an interpretation of a product's packaging that is 'unreasonable and unactionable.'" *Lemke v. Kraft Heinz*, 2022 WL 1442922, at *5 n.3 (W.D. Wis. May 6, 2022) (collecting cases).

[11] The court in *Castle* found that a label bearing the statement "Smoked Gouda" could plausibly deceive a reasonable consumer into believing that "smoked" referred to a process because it was an adjective that literally meant the cheese had been smoked. 2022 WL 4776319, at *13-14. Here, on the other hand, Smokehouse® is a noun and a brand name. In addition, while the court in *Castle* noted that "[i]ngredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity," *id.* at *12, Smokehouse®, unlike "Smoked," is not an "ingredient" or "component" present inside the product—it is "a physical structure where food is prepared" (*see* Comp. ¶ 12). *Castle* is also distinguishable because the label here has a picture of the visible seasoning that was not at issue in *Castle*.

[12] In *Colpitts I*, despite finding it to be a "close call," the court declined to conclude as a matter of law that the brand name Smokehouse® was not misleading. 527 F. Supp. 3d at 580-84. To reach its holding, however, the court did not consider the mass-marketed nature of the product, the image of the visible white seasoning in close proximity to Smokehouse® on the front of the package or the fact that it was a trademark. *See id.*

*Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1278 (N.D. Ala. 2011) (collecting cases). A brand name is "more akin to sales talk and puffery . . . than to a description of a product, a promise, or an affirmation of fact." *See id.* ("[T]he trade names SteamVac® and PowerSteamer® do not expressly warrant what those products will or can do"). Thus, the "trademark symbol and ingredient list confirm it is implausible that objectively reasonable consumers would think the almonds were actually smoked." *Cummings*, 2023 WL 3487005, at *4.

## III. PLAINTIFF CANNOT ASSERT CLAIMS UNDER OTHER JURISDICTION'S CONSUMER FRAUD STATUTES.

Plaintiff cannot assert his Multi-State Consumer Fraud Claim, which advances claims under the consumer fraud statutes of Puerto Rico, U.S. Virgin Islands, American Samoa, Guam, and Arizona. (Compl. ¶¶ 96, 120-24.) First, American Samoa and Puerto Rico do not authorize a private right of action for consumer fraud. *See* Am. Samoa Consumer Prot. Act, A.S.C.A. §§ 27.0401, 27.0402(a)(4)-(5) (vesting enforcement solely with Director of the Bureau of Consumer Protection); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 810 (E.D. La. 2007) ("Puerto Rico law does not provide for a private right of action for consumer fraud.") (citing *Simonet v. SmithKline Beecham*, 506 F. Supp. 2d 77, 90-91 (D.P.R. 2007)). Second, Plaintiff—a Wisconsin resident who purchased the Almonds in Wisconsin (Compl. ¶¶ 74, 81, 85)—"cannot assert claims under laws of states where he does not reside and has suffered no injury." *Martin v. LG Elecs. USA, Inc.*, 2015 WL 1486517, at *10 (W.D. Wis. Mar. 31, 2015) (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013)). Plaintiff has not plausibly pled that the consumer protection statutes of any of these jurisdictions intended to apply extraterritorially and protect a purchase of a Wisconsin resident made in Wisconsin.[13]

---

[13] While this Court in *Le v. Kohls Department Stores, Inc.* found that a named plaintiff had standing to assert claims under other states' consumer protection statutes, it relied on *Morrison v. YTB International, Inc. See* 160 F. Supp. 3d 1096, 1111-14 (E.D. Wis. 2016) (citing 649 F.3d 533, 536

## IV.    THE BREACH OF WARRANTY CLAIMS FAIL.

In addition to failing to plead injury (*see supra* Part I), Plaintiff's express and implied warranty claims must be dismissed because he did not allege privity or provide pre-suit notice. Moreover, Plaintiff's express warranty claim fails because BDG did not make an affirmation that the Almonds were smoked.  Finally, the implied warranty claims fail because the Almonds were merchantable and Plaintiff does not allege any of the required elements for his fitness for a particular purpose claim.

### A.    Plaintiff Does Not Plead Privity.

Plaintiff's express and implied warranty claims fail because "Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty." *St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 626 (7th Cir. 2008).  Because privity is required even for "purchasers of consumer goods," this Court has consistently dismissed warranty claims where a plaintiff bought a product from a third-party retailer, "not Defendants directly." *See, e.g.*, *Loeb v. Champion Petfoods USA Inc.*, 2018 WL 2745254, at *7 (E.D. Wis. June 7, 2018) (Stadtmueller, J.); *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *4 (E.D. Wis. July 1, 2019) (Stadtmueller, J.).  Here, Plaintiff concedes that he purchased the Almonds from "third-parties," including Costco.  (*See* Compl. ¶¶ 79, 85.) Thus, Plaintiff's express and implied warranty claims fail.  *See* PJI, § II.B-D (Plaintiff must

---

(7th Cir. 2011)).  But more recently, several courts in the Seventh Circuit and elsewhere have repeatedly recognized *Morrison*'s "inapplicability" to the "issue of named plaintiff's standing to bring out-of-state claims." *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *3 (N.D. Ill. June 1, 2022); *see also Rivers of Life Int'l Ministries v. GuideOne Ins. Co.*, 2022 WL 17261845, at *5 (W.D. Tenn. Nov. 18, 2022) (reliance on *Morrison* is "misplaced"); *Rivera v. Invitation Homes*, 2019 WL 11863726, at *2 (N.D. Cal. June 19, 2019) ("It is not clear at all that *Morrison* applies to cases where named plaintiffs assert claims under the laws of states in which they do not reside and where they suffered no injury.").  In any event, BDG is not arguing a lack of Article III standing but that the named plaintiff does not have statutory standing.

establish that BDG is a merchant who sold the Almonds directly to Plaintiff).

**B. Plaintiff Did Not Provide Pre-Suit Notice to BDG.**

Plaintiff's breach of express and implied warranty claims also must be dismissed because he failed to provide BDG with pre-suit notice. A plaintiff must provide a defendant with notice of a breach of warranty "within a reasonable time after the buyer discovers or should have discovered any breach." Wis. Stat. § 402.607(3)(a). This provision "is intended to 'open the way for settlement through negotiation between the parties[] and permit the seller to 'investigate the claim while the facts are fresh.'" *Cota*, 603 F. Supp. 3d at 673 (quoting *Wilson v. Tuxen*, 754 N.W.2d 220, 232 (Wisc. Ct. App. 2008)). Plaintiff alleges that he meets this requirement because: (1) he "provided or will provide notice to Defendant" (Compl. ¶ 134); (2) he filed the complaint (*id.* ¶ 135); and (3) he is relying on BDG's purported receipt of "complaints by third-parties" (*id.* ¶ 136). Each of these allegations fails to fulfill the pre-suit notice requirement.

First, Plaintiff's vague allegation that he "provided or will provide" notice fails. In *Cota*, the court dismissed express and implied warranty claims where the plaintiffs made an identical "equivocal allegation." 603 F. Supp. 3d at 673; *see also Castle*, 2022 WL 4776319, at *19 (same).

Second, Plaintiff did not satisfy the notice requirement simply by filing suit because "'under Wisconsin law, service of summons and a complaint cannot function as the notice required' by § 402.607(3)(a)." *Cota*, 603 F. Supp. 3d at 673 (quoting *Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 839 (E.D. Wis. 2021)); *see also Castle*, 2022 WL 4776319, at *18-19 (dismissing express and implied warranty claims because "summons and complaint did not give the defendant . . . notice").

Finally, the allegation that BDG received notice through third-party complaints is also insufficient as a matter of law because "[c]omplaints from regulators, competitors, or other consumers cannot substitute for [plaintiff's] obligation to notify Defendant of her specific

18

complaints prior to filing suit." *Elder v. Bimbo Bakeries USA, Inc.*, 2022 WL 816631, at *4 (S.D. Ill. Mar. 17, 2022) (applying identically worded Illinois UCC counterpart of Wis. Stat. § 402.607(3)(a)). Thus, the warranty claims fail for lack of notice. *See* PJI, § II.B-D (Plaintiff must establish that he provided notice to BDG within a reasonable time prior to filing suit).

### C. BDG Did Not Make Any Affirmation Regarding the Almonds.

Plaintiff's breach of express warranty claim also fails because BDG did not make a false affirmation of fact. Under Wisconsin law, "[a]n express warranty is created when a seller makes an affirmation of fact or promise to the buyer." *Bryant v. BMW of N. Am. LLC*, 585 F. Supp. 3d 1178, 1182 (E.D. Wis. 2022) (citing Wis. Stat. § 402.313). The brand name Smokehouse® is not an affirmation of fact or promise that the Almonds were, as Plaintiff alleges (Compl. ¶ 125), subjected to a smoking process and is "more akin to sales talk and puffery . . . than to a description of a product, a promise, or an affirmation of fact." *Boyd*, 230 F. Supp. 3d at 1278 (collecting cases and explaining "courts reject reliance upon a tradename to show the existence of an express warranty or deception"); *see* PJI, § II.B (a brand name is not an express affirmation or promise, and jury must consider the surrounding circumstances, including the way the statement was made).

### D. The Almonds Were Fit for Human Consumption.

Plaintiff's implied warranty claim must also be dismissed because the Almonds were fit for human consumption. "The basic question under" a breach of implied warranty of merchantability claim "is whether the product is fit for the ordinary purpose for which it is intended." *Johnson v. Mars, Inc.*, 2008 WL 2777063, at *2 (W.D. Wis. July 14, 2008) (citing Wis. Stat. § 402.314). "In the context of food products, the plaintiff must show that the item was not 'reasonably fit for human consumption.'" *Id.* (quoting *Betehia v. Cape Cod Corp.*, 103 N.W.2d 64, 66 (Wis. 1960)).

For example, in *Johnson*, the court dismissed a complaint where the plaintiff failed to show that a candy bar was not "reasonably fit for human consumption" and explained that "this standard could be met if the candy bar included foreign objects such as metal." *Id.* Here, on the other hand, Plaintiff fails to allege that the Almonds made him sick or could not be consumed. (*See* Compl. ¶ 138.) A mere conclusory allegation that the product was "not merchantable" is insufficient. *See* PJI, II.C (Plaintiff must establish that the Almonds were not fit for consumption at time of sale).[14]

### E. The Fitness for a Purpose Claim Fails for Several Additional Reasons.

Plaintiff's claim for breach of implied warranty of fitness for a particular purpose fails for several additional reasons. An implied warranty of fitness for a particular purpose is created only "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Wis. Stat. § 402.315. None of these requirements have been alleged here.

First, a "'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by a buyer which is peculiar to the nature of his business." *H.B. Fuller Co. v. Kinetic Sys., Inc.*, 932 F.2d 681, 689 (7th Cir. 1991) (affirming judgment that plaintiff had no claim for breach of implied warranty of fitness for particular purpose under Wisconsin law). Here, Plaintiff fails to allege that he purchased the Almonds for something other than consumption. To the contrary, the Complaint is predicated on Plaintiff's desire to consume

---

[14] Plaintiff also appears to conflate merchantability with fitness for a particular purpose in alleging that the "Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff." (Compl. ¶ 139.) "[C]ourts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). It necessarily follows that Plaintiff's *inaccurate* recitation of the elements of a breach of implied warranty of merchantability claim are insufficient to state a claim. *See Abbott v. SunTrust Mortg., Inc.*, 2009 WL 127858, at *3 (E.D. Va. Jan. 15, 2009) (dismissing complaint containing "formulaic and largely incorrect recitations of various causes of action").

the Almonds. And, while Plaintiff alleges that "he expected [the Almonds] w[ere] made in a smokehouse instead of having added liquid smoke flavor" (Compl. ¶ 139), that is a subjective expectation—not a use. *See* PJI, II.D (Plaintiff must establish that BDG had reason to know the particular purpose for which he was to use the Almonds).[15]

Second, Plaintiff fails to allege that BDG knew what his non-existent particular use was **before** he purchased the Almonds. While the Complaint conclusorily alleges that "Defendant had reason to know the particular purpose" (Compl. ¶ 139), that allegation is contradicted by his own admission that he purchased the Almonds through a third party and thus had no pre-purchase communication with BDG. (*See* Compl. ¶ 85.) BDG, therefore, could not have known what the particular purpose was. *See Veath Fish Farm, LLC v. Purina Animal Nutrition, LLC*, 2017 WL 4472784, at *8 (S.D. Ill. Oct. 6, 2017) ("[T]here is no allegation that Plaintiff specifically approached the manufacturers to ensure that the product would do something above and beyond its normal advertised function"); *see* PJI, II.D (Plaintiff must establish that BDG had reason to know the particular purpose before the purchase).

For the same reasons, Plaintiff has also not plausibly alleged that he relied on the "seller's skill and judgment to select suitable goods" or that BDG was aware of such reliance. *See* Wis. Stat. § 402.315; *see also Burlington Graphics Sys., Inc. v. Ritrama, Inc.*, 2015 WL 4506878, at *18 (E.D. Wis. July 24, 2015) ("A showing that the buyer relied on the seller to select the correct product for the buyer is a requisite for recovery . . . . When a buyer selects its own goods, it cannot

---

[15] In alleging that the Almonds were "not fit for the ordinary purpose for which" they were "intended" (Compl. ¶ 138), the Complaint belies Plaintiff's claim that the Almonds were used for a special or particular purpose. *See Haley v. Kolbe & Kolbe Millwork Co.*, 2015 WL 9255571, at *5 (W.D. Wis. Dec. 18, 2015) ("Plaintiffs did not allege any special or particular use for the windows, and their allegation that the windows were not fit for their intended use suggests the customary uses of the windows and not a special or particular purpose").

recover upon the implied warranty of fitness for a particular purpose."). Plaintiff's bare and conclusory assertion that "he relied on Defendant's skill and judgment to select or furnish such a suitable product" (Compl. ¶ 139) is wholly insufficient to state a claim. *See* PJI, II.D (Plaintiff must establish that BDG had reason to know that Plaintiff was relying on BDG's skill and judgment to select or furnish the Almonds).

In sum, where, as here, plaintiffs fail to "allege that the consumption of the [food] products is not the ordinary use of such products or that defendant had reason to know what the particular, non-ordinary use of the product would be," their breach of implied warranty of fitness for a particular purpose claim must be dismissed. *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007); *see* PJI, § II.D (Plaintiff must establish he had a particular purpose for which the Almonds were to be used and BDG knew of such purpose).

## V.      THE MMWA CLAIM FAILS.

Plaintiff's MMWA claim fails for at least two reasons. First, the brand name Smokehouse® does not meet the MMWA's definition of a "written warranty," which is defined as any "written affirmation of fact or written promise . . . which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). The front label's reference to the brand name Smokehouse® does not affirm or promise that the product is "defect free or will meet a specified level of performance over a specified period of time." *See Castle*, 2022 WL 4776319, at *21 (dismissing MMWA claim because "Smoked Gouda" label did "not meet the statute's definition of a written warranty"); *see also* PJI, II.E (Plaintiff must establish that BDG promised the Almonds would be defect free or meet a specified level of performance over a specified period of time).

Second, the MMWA "depends on the existence of an underlying viable state-law warranty claim." *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021). Yet, Plaintiff has not alleged a viable state law claim for breach of warranty (*see supra* Part IV), which compels dismissal of his MMWA claim. *See Castle*, 2022 WL 4776319, at *21; *see also* PJI, II.E (Plaintiff must establish that BDG breached an express or implied warranty under state law to prove MMWA claim).

## VI. THE UNJUST ENRICHMENT CLAIM FAILS.

"In Wisconsin, an unjust enrichment claim requires '(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so.'" *Weaver*, 2019 WL 2774139, at *6. The unjust enrichment claim here fails because (1) Plaintiff did not directly confer a benefit on BDG; (2) it is duplicative of his other causes of action; and (3) it is not equitable to allow Plaintiff to recover when he received a product that was fit for its ordinary purpose.

First, Plaintiff's unjust enrichment claim fails because "[t]he conferral of the benefit must be directly from the plaintiff to the defendant and not, for instance, a third-party retailer." *Id.* (citing *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 (E.D. Wis. 2019) (Stadtmueller, J.) and dismissing unjust enrichment claim where the plaintiff did "not allege that he purchased the [product] directly from Defendants" and instead alleged purchase from "independent retailers."); *see also Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *2 (N.D. Ill. Mar. 30, 2022) ("Wisconsin law strictly construes the first element of an unjust enrichment claim"). Like the plaintiff in *Weaver*, Plaintiff here does not allege that he purchased the product directly from BDG and concedes that he purchased the Almonds from "third-parties" (Compl. ¶¶ 79, 85). Thus, Plaintiff's unjust enrichment claim must be dismissed. *See* PJI, § II.H (Plaintiff must establish that he directly conferred upon BDG a benefit).

Second, Plaintiff's unjust enrichment claim must be dismissed because a plaintiff "cannot bring her unjust enrichment claim if it is derivative of and predicated on a statutory claim available to the plaintiff." *Castle*, 2022 WL 4776319, at *21; *see Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021) (affirming dismissal of unjust enrichment claim because it was "derivative of, and predicated upon" Wisconsin statutory claim and "[a]llowing a double recovery for these intertwined claims may itself be inequitable"). For example, in *Weaver*, this Court held that the plaintiff could "not resort to a parallel equitable theory of recovery" because the unjust enrichment claim was predicated on the plaintiff's Wisconsin Deceptive Trade Practices Act claim, which was the "centerpiece of Plaintiff's lawsuit." 2019 WL 2774139, at *6-7.

Finally, Plaintiff's unjust enrichment claim must also be dismissed because "the equity concern embodied in the doctrine of unjust enrichment is 'getting something for nothing, not providing a product for a price.'" *Id.* at *6 (quoting *Tsamota Certification Ltd. v. ANSI ASQ Nat'l Accreditation Bd. LLC*, 2018 WL 1936840, at *9 (E.D. Wis. Apr. 24, 2018)). Like the plaintiff in *Weaver*, Plaintiff here "did receive something, just not something of the quality he desired." *See id.*; *see also* PJI, § II.H (Plaintiff must establish that he conferred a benefit on BDG and BDG accepted and retained the benefit under circumstances in which it would be unfair to do so).

## VII. PLAINTIFF'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL.

Plaintiff's common law fraud and negligent misrepresentation claims must be dismissed because they are barred by the economic loss rule and Plaintiff fails to adequately plead the elements of both claims.

### A. The Economic Loss Rule Bars the Fraud and Negligent Misrepresentation Claims.

The economic loss rule is "well-established" and "[w]ithout doubt, . . . is a threshold issue that must be determined before delving into the elements of each tort." *Bowen Med. Co. v. Nicolet*

*Biomed. Inc.*, 2002 WL 32340885, at *6 (W.D. Wis. Nov. 14, 2002). The rule, which applies to "consumer transactions," prohibits "recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Brame*, 535 F. Supp. 3d at 841 (citing *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 241 (Wis. 2004)).

For example, in *Castle*, the court dismissed the plaintiff's fraud and negligent misrepresentation claims and held that they were "barred by the economic loss doctrine" where the plaintiff alleged "only that she spent money on an item that did not match her expectations" and that she paid a "premium" price for the cheese. 2022 WL 4776319, at *2-3, 16. "That is the definition of an economic loss." 2022 WL 4776319, at *16. As the "plaintiff's negligent misrepresentation and fraud claims ar[ose] out of a commercial transaction" and the harm alleged was "solely economic," the claims were barred by the economic loss doctrine.[16] *Id.* at *16.

The same result is compelled here as Plaintiff asserts an identical allegation that he paid a "premium" for the Almonds and pleads only economic harm in alleging that "[t]he value of the Product that plaintiff purchased was materially less than its value as represented by Defendant." (Compl. ¶¶ 68, 71.) Moreover, the crux of Plaintiff's complaint is that BDG made misrepresentations related to the characteristics and "attributes" of the Almonds by "misleading consumers to expect almonds prepared in a smokehouse." (*Id.* ¶¶ 27, 67; *see also id.* ¶¶ 43, 86, 152.) Because the economic loss rule "precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations," *Brame*, 535 F. Supp. 3d at 841, Plaintiff's fraud and negligent misrepresentation claims must be dismissed.

---

[16] The court rejected the plaintiff's attempt to rely on the fraud-in-the-inducement exception to the economic loss rule because the defendant's alleged misrepresentation "relate[d] to the quality or characteristics of the cheese." *Id.*

**B.    Plaintiff Fails to Plead the Elements of Fraud and Negligent Misrepresentation.**

"Claims of negligent misrepresentation and intentional misrepresentation share the following elements: '1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage.'  To prevail on an intentional misrepresentation claim, also called fraud or fraudulent misrepresentation, the plaintiff must also prove the following additional elements: '4) the defendant must have made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false, and 5) the defendant must have made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage.'"  *Alswager v. Rocky Mtn. Instrumental Labs., Inc.*, 2011 WL 1113371, at *7 (E.D. Wis. Mar. 24, 2011) (Stadtmueller, J.) (quoting *Tietsworth*, 677 N.W.2d at 239).

Here, Plaintiff fails to plead these elements with particularity as required by Rule 9(b) for his fraud claim and fails to adequately allege these elements for his negligent misrepresentation claim.  Specifically, as discussed, Plaintiff fails to plead that BDG made a false representation and does not allege a cognizable injury.  (*See supra* Sections I.A-B and II.B.)  In addition, Plaintiff fails to plead reliance and fraudulent intent, or that there was a duty to disclose.

### 1.    *Plaintiff Does Not Plead Reliance.*

Plaintiff fails to sufficiently allege reliance as is required to assert both fraud and negligent misrepresentation.  Under Wisconsin law, "[t]he gravamen of [a misrepresentation claim] is the nature of the false words used and the reliance which they may reasonably induce."  *Hamus v. Bank of N.Y. Mellon*, 2011 WL 13266806, at *9 (W.D. Wis. May 13, 2011) (alteration in original); *see Calnin v. Hilliard*, 2008 WL 336892, at *14 (E.D. Wis. Feb. 5, 2008) (Stadtmueller, J.) ("A fraudulent representation . . . is actionable only if there is reasonable reliance, a requirement

intended in part to screen out trivial or concocted fraud claims."). In *Hamus*, for instance, the court dismissed the plaintiffs' fraud claim where the plaintiffs did not allege "facts showing a plausible basis to infer reliance" and found the plaintiffs' allegation that they "believed [defendant's] representations to their detriment" to be "conclusory" and "insufficient to survive a 12(b)(6) motion." 2011 WL 13266806, at *9. Likewise, in *Cota*, the court dismissed a fraud claim where the plaintiff's allegations were "vague," and were, "at best, designed to address the 'who, what, where, when, and how' without providing any real detail." 603 F. Supp. 3d at 674-75.

Here, Plaintiff generally alleges that he "relied on the words, terms[,] coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately through in-store, digital, audio, and print marketing." (Compl. ¶ 87.) But Plaintiff does not identify **which** specific aspects of the label he allegedly relied on, nor does he *identify* any "digital, audio, [or] print marketing" or other "digital, print and/or social media" he allegedly relied on. Put simply, Plaintiff's vague allegations do not contain sufficient factual matter to show reliance and state a claim for relief, let alone "satisf[y] Rule 9(b)'s stringent standard." *See Cota*, 603 F. Supp. 3d at 674.

### 2. *Plaintiff Does Not Plead Fraudulent Intent.*

Plaintiff's fraud claim also fails because he does not allege facts showing that BDG knew that any representation was false or that it intended to deceive consumers. "While Rule 9(b) permits states of mind to be pleaded generally, the rule requires plaintiffs to plead 'with particularity' any 'circumstances constituting fraud.'" *Grove Holding Corp. v. First Wis. Nat. Bank of Sheboygan*, 803 F. Supp. 1486, 1501 (E.D. Wis. 1992) (quoting Fed. R. Civ. P. 9(b)). Thus, "[p]laintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement

that the circumstances of the fraud be pleaded with particularity." *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990).

For example, in *Grove Holding Corp.*, the court dismissed the plaintiff's fraud claim where the plaintiff alleged that the defendants "knew or should have known that . . . misrepresentations were not in accordance with the truth" and held that it was "too conclusory to meet the requirements of Rule 9(b)." 803 F. Supp. at 1501-04. Similarly, courts in this Circuit routinely dismiss fraud claims where the plaintiff alleges that a defendant's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" and have found such allegations "conclusory" and "fall short of Rule 9(b)'s pleading requirements." *See Connor v. Abbott Labs., Inc.*, 2023 WL 2690853, at *4 (S.D. Ill. Mar. 29, 2023); *see, e.g.*, *Sanders v. Hillshire Brands Co.*, 2022 WL 2643974, at *4 (S.D. Ill. July 8, 2022) (same); *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill. 2022) (same).

Like the plaintiffs in *Connor*, *Sanders*, and *Kinman*, Plaintiff here baldly alleges that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 151.) But this conclusory allegation of fraudulent intent is insufficient and "fall[s] short of Rule 9(b)'s pleading requirements." Accordingly, the Court should dismiss Plaintiff's fraud claim. *See* PJI, § II.G (Plaintiff must establish that BDG represented that the Almonds were subjected to a smoking process with knowledge that it was false or recklessly without caring whether it was true or false).

### 3. *Plaintiff Fails to Allege a Duty to Disclose.*

Plaintiff's negligent misrepresentation and fraud claims that are predicated on an omission theory fare no better. The heightened Rule 9(b) pleading requirements apply with equal force to claims for fraudulent omission. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir.

28

2012).    In addition, "it is 'well-established that a nondisclosure is not actionable as a misrepresentation tort unless there is a duty to disclose.'"  *Alswager*, 2011 WL 1113371, at *7 (quoting *Tietsworth*, 677 N.W.2d at 238).  And "[g]enerally, there is no duty to disclose all facts known to a party in an arm's-length transaction."  *Van Den Heuvel v. AI Credit Corp.*, 951 F. Supp. 2d 1064, 1074 (E.D. Wis. 2013).  Instead, a party may have a duty to disclose a fact only where:

> (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Id.*  "There is a reasonable expectation of disclosure when taking advantage of a party's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling."  *JBCB, LLC v. McKenna Berry Co., LLC*, 2017 WL 6403089, at *3 (Wis. Ct. App. 2017); *cf. Weaver*, 2019 WL 2774139, at *5 ("[P]laintiff could have reasonably expected that something so dangerous and disgusting as harmful chemicals and other contaminants would be disclosed if present in Defendants' products, where all of the marketing materials emphasized their premium quality and healthfulness.").

In addition, a plaintiff cannot satisfy Rule 9(b) or plausibly plead an omission for a fraud claim where "the ingredient list discloses" the product's ingredients.  *See Winston v. Hershey Co.*, 2020 WL 8025385, at *6 (E.D.N.Y. Oct. 26, 2020); *see also Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *26 (N.D.N.Y. Mar. 31, 2022) ("[T]the fact that Defendants disclosed, prominently on their packaging, that at least half of their animal ingredients were not fresh . . . renders it implausible that Plaintiff could not have discovered the inclusion of non-fresh ingredients through the exercise of ordinary intelligence.").

Here, Plaintiff does not sufficiently allege that BDG owed him a duty. Plaintiff summarily alleges that BDG "omitted the attributes and qualities" of the Almonds and that BDG owed him a duty because BDG holds "itself out as having special knowledge and experience in this area." (Compl. ¶¶ 142, 148.) While it is "an open question whether the duty to disclose" extends to "sales of consumer goods" *Tietsworth*, 677 N.W.2d at 239, Plaintiff's attempt to allege a duty fails because he does not allege fraudulent intent or that BDG knew that he would "enter[] into the transaction under a mistake" as to the attributes and qualities of the Almonds. *Van Den Heuvel*, 951 F. Supp. 2d at 1074. Nor does Plaintiff allege that he "could not reasonably be expected to discover" that the Almonds smoky flavor comes from seasoning, *id.*, especially where the ingredient panel confirms and expressly states that the Almonds derive their smoky taste from "natural hickory smoke flavor" and other "natural flavors" (Compl. ¶¶ 45-46). *See Winston*, 2020 WL 8025385, at *6. And fatally, Plaintiff fails to show that use of the brand name Smokehouse® on the front label "is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling" thereby requiring a disclosure that the Almonds were not subjected to a smoking process. *JBCB*, 2017 WL 6403089, at *3. Because Plaintiff fails to sufficiently allege the existence of a duty to disclose, Plaintiff cannot avoid dismissal of his negligent misrepresentation and fraud claims by relying on an omission theory.

## CONCLUSION

BDG respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.[17]

---

[17] It is well settled that courts should dismiss a complaint with prejudice where "any amendment would be futile." *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014). Here, although Plaintiff has had nearly three years since the *Colpitts* action was filed to avail himself of litigation relating to the Almonds, the Complaint lacks factual support, relies on a price premium theory of injury where no such premium exists, and asserts statutory claims that do not provide for a private right of action as well as common law claims that are inactionable as a matter of law. Leave to amend will not cure these many independent and substantial defects.

Dated: May 22, 2023

 */s/ Paul E. Benson*
Paul E. Benson
**Michael Best & Friedrich LLP**
790 North Water Street, Suite 2500
Milwaukee, WI 53202
414-225-2757
pebenson@michaelbest.com

Colleen Carey Gulliver
Rachael C. Kessler*
Jason E. Kornmehl
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
212-335-4500
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com
jason.kornmehl@us.dlapiper.com

*Application for admission pending

*Counsel for Defendant Blue Diamond Growers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 22, 2023, I electronically filed the foregoing document using the ECF System for the United States District Court for the Eastern District of Wisconsin. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Paul E. Benson*
Paul E. Benson
**Michael Best & Friedrich LLP**
790 North Water Street, Suite 2500
Milwaukee, WI 53202
414-225-2757
pebenson@michaelbest.com