# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IGOR ZAPADINSKY,<br><br>Plaintiff,<br><br>v.<br><br>BLUE DIAMOND GROWERS,<br><br>Defendant. | Case No. 23-CV-231-JPS<br><br><br>ORDER |

This case challenges Defendant Blue Diamond Growers's ("Defendant") "Smokehouse®" almonds' labels as misleading because the almonds are not actually made in a smokehouse. ECF No. 1. On February 19, 2023, Plaintiff Igor Zapadinsky ("Plaintiff") filed a class action complaint pursuant to 28 U.S.C. § 1332(d)(2)[1] alleging (1) violations of Wis. Stat. § 100.20; (2) violations of the consumer protection acts of Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, and Arizona; (3) breaches of express warranty, the implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment. ECF No. 1. Plaintiff seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees. *Id.*

On May 22, 2023, Defendant filed a motion to dismiss the complaint for want of standing and for failure to state a claim. ECF No. 11. The motion

---

[1] This is the "Class Action Fairness Act," which extends federal jurisdiction to cases in which the amount in controversy exceeds $5,000,000, there is minimal diversity, (i.e., "any member of a class of plaintiffs is a citizen of a state different from any defendant"), and the class of plaintiffs consists of at least 100 people. 28 U.S.C. § 1332(d)(2), (5)(B).

is fully briefed. ECF Nos. 12, 22, 23. Ironically, this case is all smoke and no fire. Therefore, and for the reasons explained below, the motion will be granted.

## 1. LEGAL STANDARDS

### 1.1 Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a case where the Court lacks subject matter jurisdiction. When faced with a jurisdictional challenge, the Court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In this context, the Court may also consider extrinsic evidence adduced by the parties. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

### 1.2 Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 566 U.S. at 678).

**2.    RELEVANT FACTS**

Defendant manufactures and sells "Smokehouse® Almonds" (the "Almonds"):



ECF No. 1 at 1. However, the Almonds are not made in a smokehouse, but rather are seasoned with liquid smoke flavoring, or "natural hickory smoke flavor," as described on the label's ingredient list. *Id.* at 7. Instead of using liquid smoke flavoring, "authentic smoked almonds" are soaked in brine, roasted in oils, and inserted into a smoker for several hours. *Id.* at 8.

Almonds made using this process exist in the marketplace and "are labeled identically" to the Almonds. *Id.* at 8. One such product is called "Nuts Aboutcha Hickory Smoked Almonds." *Id.* In contrast to the Almonds, competitor brands that also use liquid smoke flavoring "truthfully disclose" that fact on the front label with language such as "Naturally Flavored" or "Natural Smoke Flavored Almonds With Other Natural Flavors." *Id.* at 9. Two such brands are "Planters Smoked Almonds" and "Great Value Natural Smoke Flavored Almonds." *Id.*

Plaintiff purchased the Almonds on one or more occasions, including from Costco in New Berlin, Wisconsin. *Id.* at 13. Plaintiff contends that the Almonds' label's use of the word "'Smokehouse,' a noun, and the red and orange coloring, evocative of fire," misled him into believing the almonds were actually made in a smokehouse. *Id.* at 5, 13. Plaintiff states that he paid a premium believing the Almonds to have been made in a smokehouse or with "real smoke." *Id.* at 13. Had he known the truth, he would have paid less for or not purchased the Almonds. *Id.* Nonetheless, Plaintiff "intends to, seeks to, and will" purchase the Almonds again, when he can be assured that the Almonds' "representations are consistent with [their] abilities, attributes, and/or composition." *Id.* at 13–14.

3.    **ANALYSIS**

This is the fifth case filed against Defendant challenging the labeling of the Almonds. ECF No. 12 at 9.[2] Four of those cases have been filed by

---

[2]*See Colpitts v. Blue Diamond Growers*, No. 20-CV-02487 (S.D.N.Y. Mar. 22, 2020) (analogous action brought by Plaintiff's counsel); *Clark v. Blue Diamond Growers*, No. 22-CV-01591 (N.D. Ill. Mar. 27, 2022) (same); *Cummings v. Blue Diamond Growers*, No. 22-CV-00141 (N.D. Fla. June 24, 2022) (same); *see also Muller v. Blue Diamond Growers*, No. 22-CV-00707 (E.D. Mo. May 24, 2022) (analogous action brought by different counsel).

Plaintiff's counsel. *Id.* Since this case was filed, Plaintiff's counsel filed yet another identical case. ECF No. 23 at 6 n.3.[3] Three of the cases have already been dismissed. *Colpitts v. Blue Diamond Growers*, No. 20 CIV. 2487 (JPC), 2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) (dismissal at summary judgment); *Cummings v. Blue Diamond Growers*, No. 1:22-CV-141-AW-HTC, 2023 WL 3487005 (N.D. Fla. May 15, 2023) (dismissal on motion to dismiss); *Muller v. Blue Diamond Growers*, No. 22-CV-707, ECF No. 43 (E.D. Mo. July 18, 2023) (dismissal on motion to dismiss). One case has been permitted to proceed past the motion to dismiss stage. *Clark v. Blue Diamond Growers*, No. 22-CV-1591, 2023 WL 4351464 (N.D. Ill. July 5, 2023).

Within the Seventh Circuit, "Plaintiff's counsel has developed a fair bit of notoriety for filing cases about consumer labeling. Many of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad. They haven't survived for long." *Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023); *see also Lesorgen v. Mondelez Glob., LLC*, No. 3:22-CV-50375, 2023 WL 3568686, at *5 (N.D. Ill. May 19, 2023) ("Spaghetti is best eaten, not thrown at walls."). Unfortunately, this case fares no better, though to reach that conclusion, the Court must do the equivalent of employing a steam roller to crack a nut.

### 3.1 Standing

Defendant first contends that Plaintiff lacks Article III standing to bring his claims with respect to the Almonds. A litigant has standing to sue in federal court only when (1) the litigant has suffered an injury in fact, (2) the injury is "causally connected to the challenged conduct of the

---

[3] *See Wood v. Blue Diamond Growers*, No. 23-CV-1363 (D. Md. May 22, 2023).

defendant," and (3) the injury is "likely to be redressed by a favorable judicial decision." *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendant advances three Article III standing arguments: first, that Plaintiff has not suffered an injury in fact simply by purchasing the Almonds and because a price premium does not exist; second, that there is no causal connection between the "Smokehouse®" label and any alleged injury; and third, that Plaintiff is not entitled to injunctive relief because he cannot allege a future injury. ECF No. 12 at 13.

Each of the three Department of Agriculture, Trade, and Consumer Protection ("DATCP") regulations that Plaintiff alleges Defendant violated to support his Wis. Stat. § 100.20 claim require as an element that the plaintiff have suffered a "pecuniary loss." ECF No. 17 at 3–7. Plaintiff's claims for breach of warranty, violations of the Magnuson Moss Warranty Act, negligent misrepresentation, and intentional misrepresentation (or fraud) require him to prove an "injury," *id.* at 8, "damages," *id.* at 11, 13, 15, or "detriment," *id.* at 16, 17, respectively. To meet these elements and thus establish his standing to sue, Plaintiff alleges in the complaint that had he known the truth about the Almonds, he "would not have bought [them]" or "would have paid less for [them]." ECF No. 1 at 11. Because these two allegations each raise a different injury, the standing analysis as to each differs. The Court takes up each in turn, before turning to Defendant's arguments regarding standing to seek injunctive relief.

### 3.1.1 Monetary Damages – Price Premium Allegations

With respect to Plaintiff's standing to sue for monetary damages based on an alleged injury of having paid a premium for the Almonds, this case comes to the Court in a unique posture. The Court has the benefit of a

Case 2:23-cv-00231-JPS   Filed 08/07/23   Page 6 of 24   Document 26

prior court's decision following completion of discovery as to identical facts. The Court also has before it a robust factual challenge to Plaintiff's standing to sue for his alleged overpayment injuries, which includes extrinsic evidence from two of Defendant's sales and research executives. ECF Nos. 13, 14, 16.

Those executives aver under penalty of perjury that the "Smokehouse®" Almonds are priced identically to all of Defendant's snack almond products, including Defendant's unflavored snack almond products. ECF No. 16 at 2; ECF Nos. 13, 14. The identical pricing is employed at Costco, where Plaintiff claims to have purchased the Almonds. ECF No. 13 at 2–3. One competitor brand that Plaintiff pleads in the complaint as "truthfully" disclosing its liquid smoke flavoring, Planters, is more expensive than the Almonds. ECF No. 16 at 2; ECF Nos. 13, 14. The other brand, Great Value, is a retailer private label brand, only available at Walmart, which differs from brand-name products in a variety of ways, including by "offering a desirable, lower priced alternative." *Id.*; ECF No. 12 at 17; ECF Nos. 13, 14; *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 600 n.3 (1972). The "Nuts Aboutcha Hickory Smoked Almonds" sell for roughly three times the amount of the Almonds, which is because "[a]lmonds that are actually smoked typically cost *significantly more*" than the Almonds. ECF No. 16 at 2; ECF Nos. 13, 14.

These facts mirror those found by the *Colpitts* court following discovery and which supported that court's dismissal of identical claims on summary judgment. 2023 WL 2752161, at *5 (granting summary judgment to the defendant because "no reasonable factfinder could conclude from the evidence in the record that Plaintiff has established that he paid a price premium for the Smokehouse Almonds"). Notably, at the motion to dismiss

stage, the *Colpitts* court was faced with only a *facial*—not a *factual*—challenge to Article III standing, which explains why that case proceeded to summary judgment. *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("Defendant's challenge to standing fails in light of Plaintiff's allegations that he purchased the Product in reliance on the alleged misrepresentation and, had he 'and class members known the truth, they would not have bought the Product or would have paid less for it.'") (citation omitted).

However, when a defendant "claims that although [the plaintiff's] complaint was *facially* sufficient, *external facts* called the court's jurisdiction into question," "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009) (emphases added) (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (noting the "critical difference between facial and factual challenges to jurisdiction")).

Once a defendant mounts such a factual challenge to standing, supported by "concrete evidence that [the plaintiff] lack[s] standing to sue," "the plaintiff bears the burden of coming forward with competent proof that standing exists . . . ." *Id.* at 444–45 (citing *Lee*, 330 F.3d at 468 and *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)). In other words, a factual challenge causes "[t]he presumption of correctness that we accord to a complaint's allegations [to] fall[] away." *Id.* (citing *Commodity*

*Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).[4]

In this case, Plaintiff has not satisfied his burden of producing competent proof that he has standing based on an overpayment theory of injury in response to Defendant's robust factual challenge. Instead, Plaintiff

---

[4]In *Clark*, the Northern District of Illinois declined to consider similar affidavits from Defendant in allowing identical claims to continue past the motion to dismiss stage, viewing the jurisdictional challenge under Rule 12(b)(6) instead of 12(b)(1). 2023 WL 4351464, at *3. The Court follows Defendant's labeling of the instant motion as brought under both Rule 12(b)(1) *and* 12(b)(6), and the Seventh Circuit's holdings in *Apex,* which apply to a motion filed under *both* rules, in deciding that the affidavits may be appropriately considered. *Apex,* 572 F.3d at 442 ("[Defendant] responded . . . with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6)."); ECF No. 12 at 12 (citing Rule 12(b)(6) *and* 12(b)(1)).

Similarly, in *Cummings*, the Northern District of Florida declined to consider similar affidavits from Defendant because the preference in the Eleventh Circuit is to defer factual standing disputes "inextricably intertwined with the merits." 2023 WL 3487005, at *2 (citing *Chatham Condo. Ass'ns v. Century Vill., Inc.,* 597 F.2d 1002, 1012 (5th Cir. 1979) and *Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir. 1990)). But the Seventh Circuit has not enunciated such a preference. In fact, in *Apex,* the Seventh Circuit held that where the defendant produced evidence that called standing into question on a pleadings-stage initial motion to dismiss and the plaintiff brought no evidence forward in response, no evidentiary hearing was needed. 572 F.3d at 446; *see also id.* at 444 ("[I]f the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth.") (quoting *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777 (7th Cir. 1986)).

In a recent discussion of facial versus factual standing, the Seventh Circuit considered a factual challenge brought at the close of discovery after several unsuccessful prior facial challenges. *Flynn v. FCA US LLC,* 39 F.4th 946, 951 (7th Cir. 2022). As the Court earlier noted, it is in a unique posture here, having the benefit of discovery from another case on the same facts, and a robust factual challenge to standing prior to discovery. The Court does not take the *Flynn* holding to mean that it should disregard its duty to determine its jurisdiction when presented with an appropriate challenge based solely upon the timing in the litigation.

contends that his price premium allegations alone satisfy the Article III requirements. ECF No. 22 at 17. But this is insufficient in response to a factual challenge. Indeed, all of the cases Plaintiff cites to support this proposition involve facial challenges to standing and are therefore but a smokescreen. *Id.* (citing cases).

The evidence Defendant submits in support of its factual challenge establishes both that Plaintiff has not suffered an overpayment injury and that there is no causal connection between the "Smokehouse®" label and any alleged overpayment injury.

As Defendant's undisputed evidence shows, Plaintiff did not pay a price premium for the Almonds. Like in *Colpitts*, the facts that "Defendant charges the same wholesale and retail price for them as for other flavors of the Snack Almonds," the retailer does the same, and a "comparable product that is not misleadingly labeled . . . sold for a higher price than the Smokehouse Almonds," indicate that "any mislabeling that may have occurred did not enable Defendant to sell its product for a higher price." 2023 WL 2752161, at *4 (collecting cases holding no price premium where "allegedly mislabeled product was sold for the same price as other variants of the same product lacking the allegedly deceptive label"). Similarly, in *Flynn*, the Seventh Circuit held that the plaintiffs lacked an "alleged overpayment injury," and thus Article III standing, where they "had no competent evidence that they suffered an overpayment injury as a factual matter" in response to the defendant's factual challenge. 39 F.4th at 952.

The same is true here as to Plaintiff's standing to bring a Wis. Stat. § 100.20 claim based on alleged overpayment. Section 100.20 allows for "pecuniary loss" damages to be calculated based on either a benefit-of-the-bargain calculation or a full-purchase-price refund "based upon the proof"

in the case. *Mueller v. Harry Kaufmann Motorcars, Inc.*, 859 N.W.2d 451, ¶ 27 (Wis. Ct. App. 2014) (citing *Benkoski v. Flood*, 626 N.W.2d 851, ¶¶ 26–28 (Wis. Ct. App. 2001)). The benefit-of-the-bargain calculation is performed by subtracting the fair market value of the product from the purchase price. *Benkoski*, 626 N.W.2d, ¶ 26.

Plaintiff alleges only that the Almonds are worth less than almonds actually made in a smokehouse, not that the Almonds he bought are worth less than what he paid for them. And nor can he, given that Defendant's undisputed evidence shows that unflavored or other variants of almonds are priced the same as, if not more than, the Almonds. In other words, Plaintiff received what he paid for. While Plaintiff alleges that Great Value sells almonds with liquid smoke flavor for a lower price, the U.S. Supreme Court instructs that retail brands are distinguishable from brand names. *See Topco Assocs., Inc.*, 405 U.S. at 600 n.3. Therefore, Plaintiff has no overpayment injury or benefit-of-the-bargain damages, and accordingly, no Article III standing to sue based on that theory under § 100.20.

The lack of a price premium similarly defeats Plaintiff's Article III standing to bring misrepresentation and breach of warranty claims. Damages in intentional misrepresentation cases, too, "are measured according to the 'benefit of the bargain' rule, 'typically stated as the difference between the value of the property as represented and its actual value as purchased.'" *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, ¶ 16 (Wis. Ct. App. 2004) (quoting *Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 112 (Wis. 1980)). The same is true for negligent misrepresentation cases, *see Costa v. Neimon*, 366 N.W.2d 896, 900 (Wis. Ct. App. 1985) (citing *Gyldenvand v. Schroeder*, 280 N.W.2d 235, 239 (Wis. 1979)), and cases alleging breach of warranty and violations of the Magnuson Moss Warranty Act,

*Mayberry v. Volkswagen of Am., Inc.*, 692 N.W.2d 226, ¶¶ 16–18 (Wis. 2005) (collecting cases).

Because damages are measured in this manner, and Plaintiff received what he paid for—indeed, the value of almonds actually smoked in a smokehouse cost significantly more than what Plaintiff paid, according to Defendants' undisputed evidence—Plaintiff has no Article III standing to bring these claims for monetary damages. As a result, Plaintiff's claims for monetary damages for violations of Wis. Stat. § 100.20 (as premised on an overpayment injury), breaches of express warranty, the implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, negligent misrepresentation, and fraud, must be dismissed without prejudice for lack of Article III standing.[5]

### 3.1.2 Monetary Damages – "Would Not Have Bought" Allegations

The Court next takes up whether Plaintiff has Article III standing to bring his Wis. Stat. § 100.20 claim for monetary damages on the basis that he was injured because he "would not have bought" the Almonds absent the alleged misrepresentations. In his briefing, Plaintiff has abandoned this

---

[5] "Under Wisconsin law, unjust enrichment claims require proof of three elements: '(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so.'" *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055 (W.D. Wis. 2018) (quoting *Sands v. Menard*, 904 N.W.2d 789, ¶ 30 (Wis. 2017)).

Plaintiff pleads that the Almonds are available "from third-parties" and that he purchased them from Costco. ECF No. 1 at 12–13. Purchase from a retailer and not the defendant is insufficient to plead unjust enrichment, because the plaintiff confers a benefit on the retailer and not on the defendant. *Blitz*, 317 F. Supp. 3d at 1056. Therefore, the claim will be dismissed with prejudice.

Case 2:23-cv-00231-JPS   Filed 08/07/23   Page 12 of 24   Document 26

argument, relying instead only on his price premium allegations. ECF No. 22 at 16–17; *see also Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss.") (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) and *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995)). Failure to respond to Defendant's argument in the motion thus forfeits the issue.

Nonetheless, this allegation is insufficient to establish injury for purposes of Article III standing. While there is little case law analyzing whether a statement that one merely "would not have purchased" a product is sufficient to establish injury under Wis. Stat. § 100.20, Wisconsin courts have recently rejected the proposition that "the consumer's pecuniary loss [under Wis. Stat. § 100.20] is all payments made while subjected to an unfair trade practice." *Hoffman v. Gribble*, 988 N.W.2d 294, ¶ 22 (Wis. Ct. App. 2023) (citing *Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 767 N.W.2d 394, ¶ 6 (Wis. Ct. App. 2009)). And other jurisdictions, including as applied to the Almonds, have plainly held that such an allegation does not prove actual injury. *See, e.g.*, *Colpitts*, 2023 WL 2752161, at *4 n.3 ("The New York Court of Appeals . . . has explicitly held that merely purchasing a mislabeled product is not an injury . . . absent further proof that the purchase in some way injured the plaintiff.") (citing *Small v. Lorillard Tobacco Co. Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999)).

In *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647–48 (7th Cir. 2019), by way of additional example, the Seventh Circuit analyzed whether the plaintiffs had suffered "pecuniary loss" under Illinois law where they alleged that they "would not have purchased" a box of chocolate if they had known how much filler was in the box. The Seventh

Case 2:23-cv-00231-JPS   Filed 08/07/23   Page 13 of 24   Document 26

Circuit held that the allegation that a plaintiff "would not have purchased" a product absent deceptive advertising is insufficient. *Id.* This is so because such an allegation lacks a claim of having paid "more than 'the actual value of the merchandise . . . received.'" *Id.* at 648 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735, 740 (7th Cir. 2014) ("[The plaintiffs] never said that the chocolates they received were worth less than [what] they paid for them, or that they could have obtained a better price elsewhere. That is fatal to their effort to show pecuniary loss.")).

Viewing this case law alone, Plaintiff's allegations that he "would not have bought" the Almonds fail to establish injury for purposes of Article III standing. However, notwithstanding Wisconsin courts' recent enunciations that Wis. Stat. § 100.20 does not allow for recovery of all payments while a plaintiff is subjected to an unfair trade practice, the Court has located one Wisconsin opinion holding that "pecuniary loss"—albeit, within the meaning of Wis. Stat. § 100.18[6]—is satisfied where a plaintiff alleges that he "would not have purchased" a product had he known the truth. *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, ¶¶ 39–41 (Wis. 2007). *K & S Tool* has not been overruled. Equally compelling is the fact that § 100.20 allows for a full-purchase-price refund theory of damages, as discussed above, depending on the case. *Mueller*, 859 N.W.2d, ¶ 27 (citing *Benkoski*, 626 N.W.2d, ¶¶ 26–28).

But that is not the end of the analysis. "[A] statutory violation is not *necessarily* enough for Article III standing . . . ." *Rivera v. Google, Inc.*, 366 F. Supp. 3d 998, 1010 (N.D. Ill. 2018). "Instead, 'Article III standing requires a

---

[6]Wis. Stat. § 100.18 and Wis. Stat. § 100.20 are "related" and Wisconsin courts analyze them similarly. *Mueller*, 859 N.W.2d, ¶ 27 (citing *Benkoski*, 626 N.W.2d, ¶¶ 26–28).

concrete injury even in the context of a statutory violation.'" *DeBoard v. Ventry Apartments, LLC*, No. 1:22-CV-396-HAB, 2023 WL 4123310, at *4 (N.D. Ind. June 22, 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). "[T]he same [is] also . . . true of legal rights growing out of state law." *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (quoting *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1998)).

Moreover, Defendant emphasizes in its supplemental statement, as ordered by the Court, that it also seeks dismissal of the § 100.20 claim on the ground of statutory standing. ECF No. 24. The term "statutory standing" has "confusing usage" in the case law, but "usually refers to a situation in which, although the plaintiffs have been injured and would benefit from a favorable judgment and so have standing in the Article III sense, they are suing under a statute or statutes that were not intended to give them a right to sue; in other words, they are not within the class intended to be protected by it." *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1134 (E.D. Wis. 2016) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). For the following reasons, the Court agrees that because a bare statutory violation is not enough for Article III standing, and because *this* injury is not one the Wisconsin legislature appears to have sought to protect through § 100.20, Plaintiff lacks both Article III and statutory standing to bring his claim based on a theory that he was injured because he "would not have bought" the Almonds.

In *Weaver v. Champion Petfoods USA Inc.*, this Court analyzed and distinguished *K & S Tool* from facts similar to those presented here. 471 F. Supp. 3d 876, 886 & n.4 (E.D. Wis. 2020), *aff'd*, 3 F.4th 927 (7th Cir. 2021). In that case, the plaintiff alleged that he was misled by statements on dog food packaging and that he "would not have purchased" the product had he

known the truth. *Id.* at 882. The plaintiff argued for both benefit-of-the-bargain, or price premium, damages, as well as full refund damages on the basis of the holding in *K & S Tool*. *Id.* at 886–87.

As to the latter, the Court explained that, for purposes of Wis. Stat. § 100.18, Wisconsin courts are clear that a plaintiff only has standing to sue for a full refund in certain "instances where such a refund is warranted" and "adheres to the remedial purpose" of the statute. *Id.* at 886 (quoting *Mueller*, 859 N.W.2d, ¶ 25). The Court reasoned that the product in *K & S Tool*—a metal press with 800 tons of pressing force instead of 1,000 tons of pressing force—was different from dog food. *Id.* at 887 & n.4. The *K & S Tool* plaintiff "received essentially nothing from the inadequate metal press," while the plaintiff "received the vast majority of the benefit of his purchase in that his dogs were sustained and remained healthy." *Id.* Wisconsin case law indicated to the Court that a full refund is warranted only where a plaintiff receives essentially no value for a purchase in order to provide a deterrent to a seller. *Id.* (citing *Mueller*, 859 N.W.2d, ¶ 25). The allegedly defective dog food simply did not rise to that level. *Id.*

In *Benkoski*, the Wisconsin Court of Appeals applied the same reasoning as the *Mueller* court in the § 100.20 context. Specifically, there, the defendant blocked the plaintiff from a mobile home sale and the court applied the price of the lost sale as the base for damages rather than a benefit-of-the-bargain approach. 626 N.W.2d, ¶¶ 3, 29. Under the facts presented, the court explained that the legislature's vision for the statute would not be satisfied by awarding benefit-of-the-bargain damages because "an injured party would rarely be able to negotiate a price greater than market value for his or her property," thus leaving him without any value. *Id.*, ¶ 29.

The same is true in this case as to Plaintiff's § 100.20 claim. Plaintiff purchased and received the Almonds and has not alleged any detriment or loss of value beyond the bare allegation that he would not have purchased them.[7] Not every violation of § 100.20 constitutes pecuniary loss for purposes of statutory standing, and not every violation of a statute constitutes an injury for purposes of Article III standing. Moreover, for the same reasons described above as to Plaintiff's alleged overpayment injury, Plaintiff has not demonstrated the requisite causal connection. Therefore, Plaintiff's § 100.20 claim for monetary damages as premised on allegations that he "would not have bought" the Almonds must also be dismissed without prejudice for lack of standing.

### 3.1.3 Standing to Seek Injunctive Relief

Plaintiff also seeks injunctive relief on the basis that he will buy the Almonds again "when he can do so with the assurance" that the label's representations are consistent with the product. ECF No. 1 at 13. He also contends that he is unable to rely not just on the Almonds' labeling, but also "other similar almonds represented as smoked," and "other nuts represented as being smoked," because he is unsure whether those assertions are truthful. ECF No. 1 at 13–14.

The Court recently considered similar allegations and held that "a conditional statement that Plaintiffs would buy the Products again '*if* assured [they] did not contain'" toxins was insufficient to establish standing given the "lack of a likely future injury." *Rosenberg v. SC Johnson & Son, Inc.*,

---

[7]Plaintiff alleges he purchased the Almonds on multiple occasions, ECF No. 1 at 13, further suggesting the Almonds are not valueless to him. *See Ramirez v. Kraft Heinz Foods Co.*, No. 22-cv-23782, 2023 WL 4788012, at *4 (S.D. Fla. July 27, 2023) (collecting cases).

Case 2:23-cv-00231-JPS   Filed 08/07/23   Page 17 of 24   Document 26

No. 20-CV-869-JPS-JPS, 2021 WL 3291687, at *4 (E.D. Wis. Aug. 2, 2021) (citation omitted). The Court further held that, in addition to relying only on a conditional future harm, the plaintiffs also failed to allege "that these labeling practices are so pervasive across a variety of Defendant's products that Plaintiffs could never be clearly on notice as to a specific product's deceptive advertisement, because the deception is too far-reaching." *Id.* (citing *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1110 (E.D. Wis. 2016)).

The Court surmises that in this case, Plaintiff, represented by the same counsel as the plaintiffs in *Rosenberg*, appears to try to remedy what went wrong in *Rosenberg* by alleging that he is likely to be deceived by other nuts' branding due to Defendant's conduct. But Plaintiff's "smoke and mirrors" argument casts too wide a net. Plaintiff has already identified a product he states is truly manufactured in a smokehouse—the "Nuts Aboutcha Hickory Smoked Almonds." ECF No. 1 at 8. Plaintiff has also identified two products that he believes are accurately labeled as not made in a smokehouse—Planters and Great Value smoked almonds. *Id.* at 9. Plaintiff can purchase these products and "simply avoid purchasing [Defendant's] products until []he has been adequately assured that [Defendant's] products contain exactly what they say they contain." *Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 676 (E.D. Wis. 2022) (citing *Camasta*, 761 F.3d at 740).

Further, by extending his fears to the nut industry at large, Plaintiff misses the point of *Le*, where the Court explained that deception that is too "far-reaching" could support standing to seek injunctive relief where that far-reaching deception leaves the plaintiff—and the Court—unsure of the extent of the harms of which the plaintiff "would be expected to be 'aware'

. . . in order to avoid future harm." *Rosenberg*, 2021 WL 3291687, at *4; *Le*, 160 F. Supp. 3d at 1110. Plaintiff's own pleading cuts any argument of this sort off at the knees. Therefore, the Court concludes that Plaintiff's plea for injunctive relief must be dismissed without prejudice for lack of Article III standing.[8]

### 3.2    Merits of Wis. Stat. § 100.20 Claim

The Court has concluded that Plaintiff lacks Article III and statutory standing to bring his § 100.20 claim. However, to avoid any doubt, particularly as to statutory standing and the Wisconsin legislature's intent, and because the Court will afford Plaintiff leave to attempt to amend his complaint, the Court notes the following as to the merits of the claim. Plaintiff's § 100.20 claim is premised on alleged violations of three separate DATCP regulations; two of those regulations require products to be identified "by their common or usual name, or by a generic name or other appropriate description that is readily understood by consumers," DATCP § 90.02(1), and in a manner that is not "false, deceptive, or misleading," DATCP § 90.02(3). ECF No. 17 at 3–7; ECF No. 1 at 15–17. Even if Plaintiff had standing, he fails to state a claim as to these two regulations.

The Court first rejects Plaintiff's assertion that Defendant violated § 90.02(1) because "Smokehouse®" is not the product's "common or usual name." ECF No. 22 at 11. Courts have routinely rejected claims such as this, universally holding that the phrase "common or usual name" suggests "the *type* of product, not a description of the ingredients or source of its flavor." *Tropp v. Prairie Farms Dairy, Inc.*, No. 20-CV-1035-JDP, 2021 WL 5416639, at

---

[8]Plaintiff also lacks statutory standing to seek injunctive relief as to his § 100.20 claim because "only the state has th[at] authority." *W. Allis Mem. Hosp., Inc. v. Bowen*, 852 F.2d 251, 258 (7th Cir. 1988); *see also* Wis. Stat. § 100.20(6).

*3 (W.D. Wis. Nov. 19, 2021) (common and usual name for product is "ice cream" not "Premium Vanilla Bean Ice Cream" or "Artificially Flavored Vanilla Bean Ice Cream With Exhausted Vanilla Bean Specks"); *see also, e.g., Loeb v. Champion Petfoods USA Inc.*, No. 18-CV-494-JPS, 2018 WL 2745254, at *7 (E.D. Wis. June 7, 2018) ("biologically appropriate" not part of product's common or usual name, which is simply "dog food," not "biologically appropriate dog food"). The product's common or usual name here is "almonds," which is conspicuously written on the label. Therefore, the claim fails.

Next, as have three courts before it, the Court holds that a reasonable consumer would not be deceived by the Almonds' packaging. Courts considering § 90.02(3) claims apply a "reasonable consumer" standard; that is, they inquire whether "the relevant labels are likely to deceive reasonable consumers." *Tropp*, 2021 WL 5416639, at *4 (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020)).

In *Tropp*, the court held that, as to a product labeled "Vanilla Bean Ice Cream," "[a] reasonable consumer would not assume from the name of the variety alone that the ice cream was flavored *by* the food identified in the name. Rather, the name indicates what flavor the ice cream will have." *Id.* at *5. Like ice cream, the Almonds "come[] in many varieties," *id.*, including honey roasted, sriracha, habanero BBQ, sweet Thai chili, and the like, ECF No. 13 at 2. Products that come in many varieties are often displayed on a shelf alongside one another, where a customer can peruse the flavor options before making a selection. *See Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 978 (7th Cir. 2020) (citing *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) ("Under the reasonable consumer standard, we look holistically at advertising to determine whether it is misleading . . . .")). No

reasonable consumer would view "Smokehouse®," listed as one flavor among many, as describing the method of production, versus the flavor. Plaintiff's argument that the "Smokehouse®" flavor is in red packaging and thus evokes "fire" is nonsensical; the leap from a color to a specific building, namely a niche building like a smokehouse, would not occur to the reasonable consumer. ECF No. 22 at 15.

Further, the Almonds' labels display the product with visible dots of seasoning on them against a plain beige background, *unlike* the "Nuts Aboutcha Hickory Smoked Almonds," which are actually smoked in a smokehouse, and show an unseasoned almond against the backdrop of a smokehouse building with billowing smoke:



ECF No. 1 at 8. In short, "the term 'Smokehouse' [is] clearly used as a flavor indicator," and "evokes a smokey flavor" but "stops short of conveying . . . that an actual smoking process was involved." *Cummings*, 2023 WL 3487005, at *3; *see also Muller*, No. 22-CV-707, ECF No. 43 at 19 ("I find that Plaintiffs have not plausibly alleged that a reasonable consumer would

likely be deceived into believing that Blue Diamond's Smokehouse® almonds were smoked in a smokehouse.").

Finally, the element of cost comes into play once again when assessing the Almonds from the point of view of a reasonable customer. In another case in this Circuit involving almonds flavored with liquid smoke manufactured by a different defendant, the Northern District of Illinois distinguished cases "in which a consumer claimed to have been deceived when a low-priced product did not contain a rare or expensive ingredient." *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1159 (N.D. Ill. 2022) (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883–85 (9th Cir. 2021) and *Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 WL 4168956, at *1–2 (S.D.N.Y. Aug, 30, 2018)). In *Rudy*, the court lacked evidence of the comparative price of almonds actually smoked in a smokehouse, which the Court has here. *Id.* Knowing that almonds smoked in a smokehouse cost significantly more than almonds with smoke flavoring, customers seeking the former, "niche, specialty product" would not be fooled. *Moore*, 4 F.4th at 884. For all these reasons, Plaintiff's § 100.20 claim as premised on DATCP § 90.02(1) and DATCP § 90.02(3) fails.[9]

---

[9] The Court dismisses without prejudice Plaintiff's claims for violations of the consumer protection acts of Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, and Arizona on these bases, given Plaintiff's concession that these statutes are "similar" to Wisconsin's. ECF No. 22 at 18. More importantly, Plaintiff lacks statutory standing to bring these claims. Many courts in this Circuit have held that a plaintiff is unable "to pursue claims based on statutory causes of action created by states where Plaintiffs neither lived nor were injured." *Brown v. Auto-Owners Ins. Co.*, No. 1:21-CV-02597, 2022 WL 2442548, at *3 (N.D. Ill. June 1, 2022) (citing *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1001 (N.D. Ill. 2017)). Delaying this inevitable conclusion "would accomplish nothing" because "[d]iscovery cannot fix the fact that [Plaintiff] ha[s] no injury under [other states' laws]." *Id.*

## 4. CONCLUSION

Defendant's motion to dismiss will be granted as stated in the text of this Order. Plaintiff may have leave to try to amend his complaint regarding the deficiencies raised in this Order,[10] if he so chooses, within **twenty-one (21) days of this Order**. If he does not do so, the entire action will be dismissed, and judgment will be entered accordingly.

As the *Cummings* court wrote with respect to the Almonds, "it appears unlikely that [Plaintiff] can cure the deficiencies with additional allegations, [but] he will have leave to try." 2023 WL 3487005, at *7. The same is the Court's opinion here.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss, ECF No. 11, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's claim for unjust enrichment be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's claims for monetary damages for (1) violations of Wis. Stat. § 100.20; (2) violations of the consumer protection acts of Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, and Arizona; (3) breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and the

---

[10]"If a complaint fails to include enough allegations to support Article III standing for the plaintiffs, the court has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). "But after the first round of amendments, the court has the discretion to deny leave to amend. If, after amendments, the jurisdictional problem persists, then the only option left is a dismissal without prejudice." *Id.* In other words, if Plaintiff believes he has a new theory of injury that can be adequately pleaded as to causation as well, he may try to amend.

Magnuson Moss Warranty Act, 15 U.S.C. § 2301; (4) negligent misrepresentation; and (5) fraud, be and the same are hereby **DISMISSED without prejudice**;

 **IT IS FURTHER ORDERED** that Plaintiff's plea for injunctive relief be and the same is hereby **DISMISSED without prejudice**; and

 **IT IS FURTHER ORDERED** that Plaintiff may have leave to try to amend his complaint regarding the deficiencies raised in this Order, if he so chooses, within **twenty-one (21) days of this Order**; if he does not do so, the entire action will be dismissed, and judgment will be entered accordingly.

 Dated at Milwaukee, Wisconsin, this 7th day of August, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge